**STATE OF TEXAS, Plaintiff,**

v.

**UNITED STATES FOREST SERVICE, et al., Defendants.**

**Civ. A. No. H–86–4224.**

United States District Court,
S.D. Texas,
Houston Division.

Jan. 22, 1987.

Renea Hicks, Asst. Atty. Gen. of Tex., Austin, Tex., for plaintiff.

Frank Conforti, Asst. U.S. Atty., S.D. Tex., Houston, for defendants.

**MEMORANDUM**

HUGHES, District Judge.

The State of Texas sued the United States Forest Service to force compliance with the National Environmental Policy Act. The Forest Service planned to reforest an area in the Sam Houston National Forest with pine seedlings after eliminating the subcanopy hardwood trees. The Forest Service prevails.

*Proceedings.*

On November 18, 1986, the court heard the state's application for a temporary restraining order. The Forest Service participated. The temporary restraining order was denied, and the hearing on the application for a preliminary injunction was set for December 9th. *State of Tex. v. United States Forest Serv.*, 654 F.Supp. 289 (S.D. Tex.1986). The court of appeals briefly stayed the Forest Service pending an appeal by Texas. *State of Tex. v. United States Forest Serv.*, 805 F.2d 524 (5th Cir.

1986). The trial was consolidated with the injunction hearing.

*Background.*

The United States owns the Sam Houston National Forest. It occupies 158,000 acres in Walker, Montgomery, and San Jacinto Counties, in southeast Texas. This dispute focuses on one segment of 5,600 acres east southeast of the town of Huntsville known as Four Notch. Although the area had been logged around the turn of the century, by the late seventies the pine stand in Four Notch were of a size and age that made them candidates for preservation. An infestation of southern pine beetles devastated Four Notch, killing a majority of the pines in 2,600 acres.

In May of 1985, the Forest Service issued an environmental assessment detailing Four Notch reforestation plans. The preferred alternative for restoring the forest is known as site preparation for artificial regeneration. This plan includes (a) removing the surviving pines, the subcanopy hardwoods, and encroaching brush, (b) shredding the debris from the dead vegitation, including the beetle-killed pines, (c) controlled burning of the debris; and (d) planting pine seedlings.

In October of 1986, the razing of the area began. At the time of trial, about 1,500 acres had been cleared. The State of Texas filed this suit on November 13, 1986, after negotiations with the Forest Service had ended.

*Findings of Fact.*

1. The 1978 long-range management plan and environmental impact statement prepared by the Forest Service, after public hearings and consultation with citizen groups, addressed the environmental consequences of a variety of practices for forest management and a variety of public policies involved.

2. Among the techniques discussed were timber harvesting, site preparation, prescribed burning, artificial regeneration, and insect control.

3. Among the policy considerations discussed were wildlife, recreation, endangered species protection, preservation, timber sales, and environmental degradation.

4. Although the 1978 study was for the whole Sam Houston National Forest, there are individual reviews of the conditions and needs of the component subdivisions, including one for Four Notch.

5. No technique or purpose involved in the Four Notch reforestation program is qualitatively distinct from those addressed in 1978.

6. After Four Notch was designated as a potential addition to Texas wilderness areas, another study was conducted to determine the best way to control the outbreak of beetles in 1983; the focus of the assessment was preservation of as much of the old pine stand as possible, protection of adjacent forest from the spread of beetle infestation, elimination of the beetle in Four Notch, and protection of the red-cockaded woodpecker.

7. In 1984, Congress eliminated Four Notch from consideration as a wilderness addition, apparently because of the devastation caused by the beetle infestation.

8. The Forest Service amended it environmental assessment and re-evaluated beetle control, replanting, and woodpecker protection.

9. The site preparation for reforestation program is a sophisticated regeneration plan, caring for the diverse ecology in Four Notch; it is more than is suggested by the short-hand phrase "crushing, burning, and replanting 2,600 acres," commonly used to describe the program.

a. Along the permanent and some intermittent streams, a minimum border of 100 feet on each side will be left undisturbed; the 1978 plan specified only 33 feet to be left as stream borders. Because bottomland tends to be hardwood predominate even in a mature pine forest, these areas are well developed forest. One of the purposes of these green barriers is to filter silt out of the rainwater runoff from the cleared areas.

b. Several tracts of upland hardwood are being preserved.

**298**

c. Several tracts are being allowed to regenerate naturally.

d. Four Notch is a complex multi-sided parcel, and there are privately owned tracts within it, mixing the cleared areas with retained forest.

e. The endangered red-cockaded woodpecker colonies are dispersed throughout all of the distinct management and ownership tracts in Four Notch. The colonies are variously affected by the plan, with some being left untouched.

10. When the Forest Service again evaluated the needs and impacts of forest management in 1985, it had access to scientific and political opinion that addressed the issues implicit in the Four Notch situation.

*Conclusions of Law.*[1]

█ 1. The National Environmental Policy Act does not require that the Forest Service issue an environmental impact statement for each site within the Sam Houston National Forest to which it intends to apply some aspect of its general management program that has been embodied in an environmental impact statement (tiering) unless the application serves an intermediate end or policy that was not part of the original review process.

█ 2. The environmental assessments by the Forest Service particular to the Four Notch infestation and reforestation programs were based upon cogent evidence and were in themselves reasonable in their conclusions.

█ 3. The site preparation and artificial regeneration will not have a significant adverse environmental consequence to the public.

*Judgment.*

As was rendered from the bench, a judgment will be entered that the State of Texas take nothing of the United States Forest Service by its claim that the Forest Service violated the National Environmental Policy Act by not issuing a site specific impact statement or by failing properly to assess the human consequences of the particular application of management techniques to Four Notch.

### FINAL JUDGMENT

It is adjudged that the State of Texas take nothing of the United States Forest Service; R. Max Peterson, Chief of the United States Forest Service; William Lannan, Forest Supervisor for National Forests in Texas; or Richard E. Lyng, Secretary of Agriculture. The costs of court are taxed against the State of Texas.

Signed on January 22nd, 1987, at Houston, Texas.

---

**1.** These conclusions are based on the analysis of the law in the opinion denying the restraining order. 654 F.Supp. at 295.