The **TOWN OF BEVERLY SHORES,**
et al., Plaintiffs,

v.

**Manuel LUJAN, Jr., et al., Defendants.**

Civ. H 89–054.

United States District Court,
N.D. Indiana,
Hammond Division.

May 10, 1989.

Ann C. Tighe, Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Ltd., Chicago, Ill., for plaintiffs.

J. Philip Klingeberger, Asst. U.S. Atty., Hammond, Ind., for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on a Motion to Dismiss filed by the defendants, Manuel Lujan, Jr., Secretary of the United States Department of the Interior, William Penn Mott, Jr., Director—National Park Service, Dale P. Engquist, Superintendent—Indiana Dunes National Lakeshore, United States Department of the Interior and the National Park Service (hereafter collectively, the defendants) on April 21, 1989.[1] For the reasons set forth below, the

---

1. On February 3, 1989, the plaintiffs, Town of Beverly Shores, a Municipal Corporation, James M. Houlihan, Jack and Olivia Tschewik, Norman and Judy Glassberg, Richard Rikoski, Thomas Oberle, Robert and Arlene Beglin, Richard Vanecko, and Nancy Mucker (hereafter col-

defendants' Motion to Dismiss the Amended Complaint is hereby GRANTED and the preliminary injunctive hearing set for May 10, 1989 is hereby VACATED.

## BACKGROUND

This lawsuit arises out of the impending repaving of a strip of off-street parking on government property off the north of Lake Front Drive for private motor vehicles utilizing the facilities at the Indiana Dunes National Lakeshore in Beverly Shores, Indiana. Lake Front Drive is a public right-of-way which is located between the lakeshore and Beverly Shores. The parking area to be repaved is off the right-of-way of Lake Front Drive and abuts the beach front property acquired by the Secretary of the Interior. The acquired property was developed as a public park area of the lakeshore and this development includes a public picnic and viewing area, hereafter referred to as "Lake View". The Lake View site was the previous site of the Red Lantern Inn. In 1969, the property, owned by Red Lantern Inn, was deeded to the government with a fifteen (15) year reservation of use granted to Red Lantern. After Red Lantern's use expired, the land became the property of the government and in 1987 the defendants demolished the Red Lantern Inn and announced their intention to establish the Lake View site.

The area to be utilized by the government as parking for the Lake View site had been utilized for parking by the prior owner, Red Lantern Inn, as well as the Town of Beverly Shores. Red Lantern had allegedly obtained permission from the Town of Beverly Shores for patron parking on the Lake Front Drive public right-of-way for many years. When the Red Lantern was demolished in 1987, the Town of Beverly Shores allowed parking in the disputed area and installed "Parking By Permit" signs. It is only when the defendants removed the parking signs and permitted public parking on the Lake View site off the unpaved portions of Lake Front Drive and made plans to construct public parking off Lake Front Drive adjoining the Lake View site that this lawsuit arose.

The plaintiffs do not challenge the construction of Lake View itself, but rather the paving of a 40 space parking strip of off-street parking on federal property off the north side of Lake Front Drive for visitors to Lake View. Specifically, plaintiffs contend that defendants' decision to pave the parking spaces on the north right-of-way of Lake Front Drive is arbitrary, capricious, an abuse of discretion, and in contravention of their statutory authority. See 16 U.S.C. § 460u et seq. and 42 U.S.C. § 4321 et seq., the National Environmental Policy Act (NEPA). Secondly, the plaintiffs contend that the defendants' act of paving parking spots on the right-of-way inpermissively countervenes the parking regulations of the Town of Beverly Shores and is a refusal by the defendants to recognize plaintiffs' exercise of its police power to regulate and control traffic and parking on public right-of-ways within the Town's

lectively, the plaintiffs) filed a Complaint along with a Motion for Temporary Restraining Order and Preliminary Injunction. However, on February 10, 1989, the Court granted the plaintiffs' Motion to Withdraw their Motion for a Temporary Restraining Order. Thereafter, on April 4, 1989, the defendants filed a Motion to Dismiss. The plaintiffs then filed a Motion for Leave to file an Amended Complaint on April 19, 1989. Fed.R.Civ.P. 15(a) provides that "[a] party may amend his pleading once as a matter of course, at any time before responsive pleading is served." The defendants have not filed an Answer and their Motion to Dismiss is not a "responsive pleading", as contemplated by Rule 15. Therefore, the plaintiffs' Motion For Leave to File Amended Complaint is unnecessary and the First Amended Complaint received by the Clerk's Office on April 19, 1989 will be accepted for filing as the Amended Complaint "as a matter of course". Stewart v. RCA Corp., 790 F.2d 624, 631 (7th Cir.1986); Ross v. Franzen, 777 F.2d 1216, 1222 (7th Cir.1985); Northlake Community Hospital v. U.S., 654 F.2d 1234, 1240 (7th Cir.1981); and Hagee v. City of Evanston, 95 F.R.D. 344, 344–45 (N.D.Ill.1982). However, in ruling on the defendants' Motion to Dismiss the Amended Complaint, th Court has taken into consideration the arguments advanced in both the April 4, 1989 and April 1, 1989 Motions to Dismiss. See, defendants' Memorandum in Support of Motion to Dismiss Amended Complaint at p. 3. The Court will look to the First Amended Complaint to determine whether it can withstand the defendants' Motion to Dismiss the Amended Complaint.

own limits.[2]

## DISCUSSION

In ruling on a Rule 12(b)(6) Motion to Dismiss, this Court must follow:

> the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).

This Court must accept "all allegations in the Complaint as true." *Collins v. County of Kendall, Ill.*, 807 F.2d 95, 99 (7th Cir. 1986). See also: *Hishon v. King and Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59, 65 (1984); and *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). In order to prevail, the defendants 'must demonstrate that the plaintiff's claim, as set forth by the Complaint, is without legal consequence." *Gomez*, 811 F.2d at 1039.

The defendants contend that the Court has no subject-matter jurisdiction over Count I or Count II; that the plaintiffs have no standing with respect to Count I and that Count I fails to state a claim upon which relief may be granted. The plaintiffs, however, argue that the Court has subject-matter jurisdiction; that they have standing to assert a claim; and, Counts I and II state a claim for relief.

## SUBJECT–MATTER JURISDICTION

The Administrative Procedure Act (hereafter APA), 5 U.S.C. § 701, *et seq.*, does not "afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); *Andrus v. Charleston Stone Products Co., Inc.*, 436 U.S. 604, 608, n. 6, 98 S.Ct. 2002, 2005, n. 6, 56 L.Ed.2d 570 (1978). However, as both parties point out, federal courts have subject-matter jurisdiction over a claim that an agency has violated the APA pursuant to 28 U.S.C. § 1331. *Califano*, 430 U.S. at 105, 97 S.Ct. at 984; *Fairview Township v. U.S. E.P.A.*, 773 F.2d 517, 527, n. 19 (3rd Cir.1985); *Reiner v. West Village Associates*, 768 F.2d 31, 33 (2nd Cir.1985). The plaintiffs have properly sought review of the agency decision pursuant to 28 U.S.C. § 1331. "Section 1331 grants federal courts original subject-matter jurisdiction over civil actions which arise under 'the Constitution, laws, or treaties of the United States.' However, even though suit under § 1331 is proper, this does not end the analysis as to whether this Court has subject matter jurisdiction. The Court must examine whether jurisdiction exists pursuant to the doctrine of sovereign immunity and 5 U.S.C. § 702.

The next issue is that of sovereign immunity. "Section 1331 does not, of itself, waive the government's sovereign immunity from suit. The plaintiff must look to the statute giving rise to the cause of action for such a waiver. Assuming such a waiver is found, for example under the Declaratory Judgment Act … APA, and no contrary intent was found in the waiving statute, this Court would then have subject-matter jurisdiction pursuant to § 1331." *B.R. MacKay & Sons, Inc. v. U.S.*, 633 F.Supp. 1290, 1295 (D.Utah, 1986) (Citations omitted); *Coleman v. U.S. Bureau of Indian Affairs*, 715 F.2d 1156, 1161 (7th Cir.1983). The Declaratory Judgment Act "does not operate to waive the United States' sovereign immunity." *B.R. MacKay*, 633 F.Supp. at 1295. Therefore, the Court must look to 5 U.S.C. § 702 to determine whether the United States has waived its sovereign immunity.[3] However,

---

2. Plaintiffs concede that Count II of the original complaint was inartfully drafted and created confusion as to whether the plaintiffs were alleging an uncompensated taking of property. Count II was subsequently amended to delete any reference to an alleged uncompensated taking of property by the defendants.

3. It is elementary that the United States, as a sovereign, is immune from suit save as it consents to be sued …, and the terms of its consent to be sued in any court defines that court's jurisdiction to entertain that suit. *U.S. v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). A waiver of sovereign immunity 'cannot be implied, but must be unequivocally expressed'. *U.S. v. King*, 395

before reaching this question the Court must determine whether this suit is in fact one against the United States and must look to the type of relief the plaintiffs are seeking.

> The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to "restrain the government from acting, or to compel it to act." (Citations omitted)

*Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15, 23 (1963); *Clark v. U.S.,* 691 F.2d 837, 840 (7th Cir.1982).

The plaintiffs have brought suit against the Secretary of the Interior, the Director of the National Park Service, The Superintendent of the Indiana Dunes National Lakeshore, in addition to the United States Department of the Interior and National Park Service. Further, the plaintiffs seek to enjoin these defendants, their successors, agents, employees, attorneys and all others "in active concert with them from fencing, paving, or constructing parking spaces, or in any other manner, using Lake Front Drive, or any part of Lake Front Drive, or any property on the lake-side of Lake Front Drive, for the parking of any automobiles, recreational vehicles, vans, trucks, campers or other motorized vehicles." (Count I, prayer for relief, ¶ D, Amended Complaint.)[4] Clearly, the plaintiffs seek to "restrain the government from acting" *i.e.* from repaving, and their suit is against the sovereign.

Since the suit is against the sovereign, the plaintiffs must show that the sovereign has waived its immunity. The plaintiffs contend they are seeking review of the defendants' decision to construct a parking facility under the Administrative Procedure Act and that 5 U.S.C. § 702 contains an express waiver of immunity. Section 702 provides in pertinent part:

A person suffering a legal wrong because of agency action ... is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States ...

This express waiver of sovereign immunity applies to "any applicable form of legal action" seeking non-monetary damages, including injunctive and declaratory relief. 5 U.S.C. § 703. Plaintiffs are seeking injunctive and declaratory relief and accordingly, the waiver is effective in this case. However, this does not end the analysis as to whether this Court has subject-matter jurisdiction. Congress has imposed certain limitations under the APA. Specifically, § 701(a)(2) provides that the Act does not apply to "agency action [that] is committed to agency discretion by law."

In Count One, plaintiffs allege the defendants' decision to make accommodations for parking at the Lake View facility is arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of their statutory authority. On the other hand, the defendants maintain that there is clear and convincing evidence that the legislative has given the Secretary of Interior broad discretion in creating and developing the Indiana Dunes National Lakeshore. Therefore, they argue there is no law to apply and the Court is without jurisdiction to review the Secretary's decision. On this point, the plaintiffs argue that 16 U.S.C. § 1 and 460u, *et seq.* constitutes "law to apply" and provides the Court with clear standards for judicial review.

Section 701(a)(2) is a very narrow exception which applies "in those rare instances

---

U.S. 1, 4, 89 S.Ct. 1501, 1504, 23 L.Ed.2d 52 (1969).

**4.** Plaintiffs concede that part of the Complaint implicates the United States as a sovereign, however, they contend that the requested injunctive relief against defendant, Dale Engquist, does not

because they allege the construction of the parking lot exceeds his statutory authority and he can be enjoined from constructing the parking lot even without infringing on the sovereign's immunity.

where 'statutes are drawn in such broad terms that in a given case there is no law to apply'." *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 2051, 100 L.Ed.2d 632 (1988) quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (citing S.Rep. No. 752, 79 Cong., 1st Sess., 26 (1945); *Arnow v. U.S. Nuclear Regulatory Commission*, 868 F.2d 223, 230 (7th Cir. 1989). "[R]eview is not to be had if the Statute is drawn so that a court would have no meaningful standard against which to judge an agency's exercise of discretion." *Webster*, 108 S.Ct. at 2052 quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). "In such a case, the statute ['law'] can be taken to have 'committed' the decision making to the agency's judgment absolutely." *Arnow*, 868 F.2d at 231 quoting *Chaney*, 470 U.S. at 830, 105 S.Ct. at 1655; *Singh v. Moyer*, 867 F.2d 1035, 1037–38 (7th Cir. 1989). In order to determine whether a "meaningful standard" exists, the Seventh Circuit has indicated that four areas should be considered: The statutory language, the statutory structure, the legislative history,[5] and the nature of the agency action. *Singh*, 867 F.2d at 1038.

A review of the structure of the relevant statute, 16 U.S.C. 460u, *et seq.*, reveals that the Secretary of the Interior is given the power to establish and administer the lakeshore. In accordance with 16 U.S.C. § 460u, *et seq.* the Secretary has authority to acquire property (460u–1, 12, 13, 19, 23); publish in the federal register (460u–2); utilize statutory authority to conserve and manage the lakeshore (460u–6); develop or conduct and submit a general management plan and various studies to Congress (460u–9, 14, 18, 21). From the statute it appears that the purpose of the lakeshore is dual: It is a place for the preservation of nature, as well as the recreational enjoyment and utilization of natural resources.

The specific language of the statute give the Secretary broad discretion. The Secretary is given authority to establish and administer the Dunes "in accordance with the provisions of Sections 460u to 460u–3 and 460u–5 to 460u–19" to "preserve for the educational, inspirational and recreational use of the public certain portions of the Indiana Dunes and other areas of scenic, scientific, and historic interest and recreational value in the State of Indiana." 16 U.S.C. § 460u. The administration of the lakeshore is governed by 460u–6, which give the Secretary the power to "utilize such statutory authorities relating to areas of the National Park System and such statutory authority otherwise available to him for the conservation and management of natural resources *as he deems appropriate* to carry out the purposes of § 460u to 460u–9 ..." (emphasis original) 16 U.S.C. 460u–6(b) further provides:

> (b) In order that the lakeshore shall be permanently preserved in its present state, no development or plan for the convenience of visitors shall be undertaken therein which would be incompatible with the preservation of the unique flora and fauna or the physiographic conditions now prevailing or with the preservation of such historic sites and structures *as the Secretary may designate: Provided*, That the *Secretary may provide* for the public enjoyment and understanding of the unique natural, historic, and scientific features within the lakeshore by establishing such trails, observation points, and exhibits and providing such services *as he may deem desirable* for such public enjoyment and understanding: *Provided further*, That the *Secretary may develop for appropriate public uses* such portions of the lakeshore *as he deems especially adaptable for such uses.* (Emphasis original)

---

**5.** The legislative history of the Indiana Dunes Lakeshore Act, P.L. 89–761, H.Rep., No. 1782, 89th Cong., 2nd Sess. (1966), U.S.Code Cong. & Admin.News 1966, p. 4116, and P.L. 94–549, S.Rep. No. 94–1189, 94th Cong., 2nd Sess. (1976), U.S.Code Cong. & Admin.News 1976, p. 5629, merely establish the lakeshore as part of the National Park Service, 16 U.S.C. § 1, *et seq.* and provides for the lakeshore's expansion. Reference is made to the authority of the Secretary of the Interior, but the history indicates the purpose, background and features of the Indiana area.

Clearly, from the plain meaning of the statutory language it is apparent that Congress has conferred upon the Secretary broad discretion in the establishment and administration of the lakeshore.

The last area of consideration to determine whether a meaningful standard exists is the nature of the agency's action. Here, the nature of the action is the construction of parking accommodations for the newly acquired Lake View area. This area to be repaved was used by the prior owner as well as the Town of Beverly Shores for parking. The agency proposes to repave the area to make available 40 parking spots. The plaintiffs do not object to or complain to the construction of the Lake View facility itself. Their sole complaint is to the repaving of the parking spaces which provide access to the Lake View facility. A review of the statutory language[6] and structure, in addition to the nature of the agency action in electing to repave an area of land which has been used in the past for parking reveals that Congress has provided no "meaningful standards" for reviewing the Secretary's action. The decision to pave or repave the area abutting the Lake View site is committed to the agency's discretion. There is no law to apply and therefore, this Court is without jurisdiction to review the Secretary's decision. *Webster,* 108 S.Ct. at 2053; *Arnow,* 868 F.2d at 232–234; *Singh,* 867 F.2d 1038–39; *Woodsmall v. Lyng,* 816 F.2d 1241, 1244–45 (8th Cir.1987). This Court has no guidance to evaluate *how* the

Secretary of Interior should exercise his discretion regarding management and preservation of the lakeshore. But, see, *Citizens to Preserve Overton Park,* 401 U.S. 402, 91 S.Ct. 814, 28 L.E.2d 136 (1971) (no feasible and prudent alternative); *Sierra Club v. Hodel,* 848 F.2d 1068 (10th Cir. 1988) (regulations and definitions). By giving the Secretary such broad discretionary authority, there is clear and convincing evidence that Congress intended to restrict judicial review of a Secretary's decisions regarding the National Lakeshore. Therefore, this Court is without jurisdiction to review the Secretary's decision as being arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 701(a)(2), § 706(2)(A).

■ Plaintiffs also contend that defendants' action in planning the parking area is not in accordance with law, is in excess of their statutory jurisdiction, authority and is not in accordance with 42 U.S.C. § 4321 *et seq.* (NEPA). However, although this Court is without jurisdiction to review the Secretary's discretionary decisions, jurisdiction is proper to review a claim that the Secretary acted outside his statutory authority. *Woodsmall,* 816 F.2d at 1246; *Doe v. Casey,* 796 F.2d 1508, 1517–18 (D.C. Cir.1986) *aff'd* in part, *revs'd* in part in *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.E.2d 632 (1988); *Assiniboine and Sioux Tribes v. Board of Oil and Gas,* 792 F.2d 782, 791–92 (9th Cir.1986) and cases cited therein; *Strickland v. Morton,* 519 F.2d 467, 471 (9th Cir.1975).

---

**6.** The plaintiffs also allege that the defendants "actions in ignoring their own studies and plans and in determining to establish Lake View parking lot as well as other lake front parking areas are arbitrary, capricious, an abuse of discretion ... 5 U.S.C. § 706(2)(A)." (Amended Complaint, ¶ 33). However, these studies or plans are merely that, studies or plans, and do not impose a standard or constitute law to apply. The plaintiffs are correct in that the Secretary of the Interior is required to prepare a general management plan and conduct a public access study of the lakeshore area. However, both 460u–9 and 469u–21 merely require the Secretary to conduct a study and submit the results of the study to the appropriate agency within a certain time limitation. The statute further sets forth the sums of money to be appropriated for the study. There is nothing in these statutory sections, nor in the plan or study, which provide

the Court with a "meaningful standard" "against which to judge the agency's exercise of discretion." Nowhere in the study or plan is there a mandate that a specific conclusion be drawn or proposal implemented. As the defendants point out, "the mandate of this statute is that *a study will be conducted,* which it was. The statute does not mandate the specific conclusion to be drawn from the study, nor, because appropriations of money are necessary to implement any development in the lakeshore, does it mandate the implementation of any aspect of the study." (Memo in support of Motion to Dismiss, p. 32). There are no notes, regulations or mandates by these studies from which the Court could utilize a standard for review, and jurisdiction is accordingly lacking. See also, *Arnow,* 868 F.2d at 236; *Masspirg v. U.S. NRC,* 852 F.2d 9, 17–18 (1st Cir.1988); and *Greenwald v. Olsen,* 583 F.Supp. 1002, 1006 (D.Mass.1984).

Plaintiffs contend defendants violated 16 U.S.C. § 460u–9, the general management plan, 16 U.S.C. § 460u–21, the transportation study, and finally, 42 U.S.C. § 4321 *et seq.* 16 U.S.C. 460u–9 merely provides that:

The Secretary shall develop and transmit to the committees on Interior and Insular Affairs of the United States Congress a general management plan detailing the development of the national lakeshore consistent with the preservation objectives of sections 460u to 460u–03 and 460u–5 to 460u–19 of this title indicating:

(1) the facilities needed to accommodate the health, safety, and recreation needs of the visiting public;

(2) the location and estimated costs of all facilities, together with a review of the consistency of the master plan with State, area wide, and local governmental development plans;

(3) the projected need for any additional facilities within the national lakeshore; and

(4) specific opportunities for citizen participation in the planning and development of proposed facilities and in the implementation of the general management plan generally.

... The Secretary shall submit the results of such study to the Committee.

Pursuant to the statutory dictates the General Management plan of February 1980 was developed and submitted. Plaintiffs do not allege the plan was not put together in accordance with the statutory guidelines or that the plan in any way violates the authorizing statute. Therefore, plaintiffs have failed to show this Court how the defendants allegedly exceeded their statutory authority and have simply failed to state a cause of action.

The next statute in question, 16 U.S.C. § 460u–21, directs the Secretary of the Interior "in consultation with the Secretary of Transportation" to "conduct a study of various modes of public access into and within the lakeshore which are consistent with the preservation of the lakeshore and conservation of energy by encouraging the use of transportation modes other than personal motor vehicles." (460u–21(a).) The Statute further provides in pertinent part:

(c) the study shall address the adequacy of access facilities for members of the public who desire to visit and enjoy the lakeshore. Consideration shall be given to alternative for alleviating the dependence on automobile transportation. The study of public transportation facilities shall cover the distance from cities of thirty-five thousand population or more within fifty miles of the lakeshore.

(d) The study shall include proposals deemed necessary to assure equitable visitor access and public enjoyment by all segments of the population, including those who are physically or economically disadvantages. It shall provide for retention of the natural, scenic, and historic values for which the lakeshore was established, and shall propose plans and alternatives for the protection and maintenance of these values as they relate to transportation improvements.

(f) The study shall present alternative plans to improve, construct, and extend access roads, public transportation, and bicycle and pedestrian trails. It shall include cost estimates of all plans considered in this study, and shall discuss existing and proposed sources of funding for the implementation of the recommended plan alternatives.

(g) The study shall be completed and presented to the Congress within two complete fiscal years from the effective date of this provision.

Nowhere do plaintiffs allege that defendants have failed to complete the study or that the study promulgated in September of 1983 violates the Statute authorizing its development and content. Plaintiffs have failed to show that defendants have exceeded their authority and have failed to state a cause of action.

Finally, plaintiffs contend that the defendants violated NEPA, 42 U.S.C. § 4321 *et seq.,* when they sought to "establish motor vehicle parking at Lake View Parking Lot ... without performing an Environmental Impact Study." They allege that under 5 U.S.C. § 706(2)(A) the defendants' actions

should be set aside. (Amended Complaint ¶ 35).

42 U.S.C. § 4332(C)(1) provides:

[A]ll agencies of the Federal Government shall ... include in every commendation or report or proposal for legislation and other major federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on ... the environmental impact of the proposed action.

■ However, an Environmental Impact Study need not be prepared unless the proposed action is a "major federal action" which "significantly affects the quality of the environment." See generally, *Ringsred v. Duluth A. Minn. Home—Rule Charter City,* 828 F.2d 1305, 1307 (8th Cir.1987); *City of Evanston v. Regional Transport Authority,* 825 F.2d 1121, 1125 (7th Cir.1987) *cert. denied* 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *Simons v. Gorsuch,* 715 F.2d 1248, 1251 (7th Cir.1983); *Foundation of Economic Trends v. Weinberger,* 610 F.Supp. 829, 837 (D.D.C.1985).

■ The defendants contend that the repaving of the area utilized for parking by both the prior land owner and the Town itself is categorically excluded from the "major federal action" provision of NEPA. The defendants have provided a document dated July 30, 1987 labeled "Categorical Exclusion for Red Lantern Picnic and Parking Area" which states in pertinent part:

*Proposed Action:*

The Red Lantern Inn is being demolished. The proposed action is to utilize this site to develop a small picnic area to improve the existing parking ...

*Proposed Action Impacts:*

As a previously disturbed site, this development will not adversely impact the site ...

*Categorical Exclusion Designation:*

This proposed action is classified as a categorical exclusion under 516 DM 6, Appendix 7.4C(3, 9, 11, 17 and 19)

Appendix 7.4 provides in pertinent part:

[T]he following NPS actions are designated categorical exclusions ...

(3) Routine Maintenance and repairs to non-historic structures, facilities, utilities, grounds and trails.

(9) Repair, resurfacing, striping, installation of traffic control devices, repair/replacement of guardrails, etc., on existing roads.

(17) Construction of minor structures, including small improved parking lots in previously disturbed or developed areas.

The defendants' determination that the parking accommodations will produce no significant impact relieves it of the obligation to prepare an impact study. *Weinberger,* 610 F.Supp. at 837. Further, no environmental assessment need be made where the action falls within a categorical exclusion of "major federal actions." *Weinberger,* 610 F.Supp. at 837. Here, the defendants have supported their position that no study was necessary since the repaving of the parking area is an exclusion. Although plaintiffs dispute whether the action is "major", they do not challenge the determination that the action is categorically excluded. The plaintiffs do no more than baldly assert that defendants' failure to provide a study violates NEPA. They simply fail to state a cause of action.

Further, the defendants contend they are in compliance with NEPA by virtue of the General Management Plan and Assessment of alternatives which discuss the development of the Lake View site as well as the parking accommodations. The Act does not "require that [the Secretary of the Interior] issue an environmental impact statement for each site within the [lakeshore] to which it intends to apply some aspect of its general management program that has been embodied in an environmental impact statement ... unless the application serves an intermediate end or policy that was not part of the original review process." *State of Tex. v. U.S. Forest Service,* 654 F.Supp. 296, 298 (S.D.Tex.1987). Since parking accommodations were discussed regarding the Lake View site, it was part of the original review process. Plaintiffs do not contend the plan or assessment are inadequate or that they fail to consider environ-

mental consequences. Therefore, their allegation must fail.

The plaintiffs have simply failed to show that the defendants' actions are not in accordance with law or are in excess of their statutory authority. Defendants have complied with their statutory duties and even accepting plaintiffs' allegations as true, plaintiffs fail to state a cause of action.

Plaintiffs also allege that defendants' action in planning the parking area is in excess of the authority set forth in their own management plans and study. As stated earlier, nothing in the plan or study establishes a standard from which the Court may review the Secretary's decision. This Court is without jurisdiction to do so. Alternatively, the defendants' actions are within the limitations of their plan and study.

The plan merely "outlines the National Park Service's broad strategies for [development opportunities] while continuing to preserve the natural values that make the lakeshore significant. The plan will be implemented gradually." (Plan, p. 4) One of the broad strategies is the implementation of a shuttle system. The plan provides that, "the shuttle system will be phased in as demand warrants." (Plan p. 26) This shuttle system is also discussed in the Review of Alternatives published in July of 1979. The Review states that an alternative "satellite parking area served by a shuttle system ... is predicated on congressional authorization for the National Park Service to acquire the Beverly Shores Island." (1979 Review at pp. 16 and 19)[7] To date, the Beverly Shores Island has not been acquired. Further, the Assessment of Alternative dated July 1979 reveals the development for 100 spaces of parking at the disputed site. (Assessment p. V–17). Additionally, the transportation study reveals that the proposed shuttle system was discussed in the Shuttle Bus Feasibility Study contained at pp. 49–59. The shuttle service is to take place "when the phrase I development of the East Unit Transit Center is completed." (p. 59) However, the transportation terminal has allegedly not been constructed. The study further states "service E–2 and E–3 would be implemented as needed." (p. 59)

Therefore, even if the Court had jurisdiction, the plaintiffs fail to state a cause of action. The management plan originally provided for the development of 100 parking spaces at the Lake View facility. Nothing in the plan or study indicates that only a shuttle system should be implemented at this time. Plaintiffs have simply failed to show that the defendants' actions were outside the authority of the plan and study of the lakeshore. The plaintiffs have failed to state a cause of action and the defendants' Motion to dismiss as to Count One is GRANTED.[8]

## COUNT II OF THE AMENDED Complaint

■ Essentially, plaintiffs contend that the defendants plan to establish parking spaces on Lake Front Drive, abutting the Lake View property interferes with the Town of Beverly Shores ordinances regarding control and regulation of vehicular traffic and parking on the Town's right-of-way and easements and is done without the permission of the Town of Beverly Shores. Again, plaintiffs seek a judicial review of the Secretary of Interior's decision. As discussed above, this Court is without jurisdiction to review the decision by the Secretary of Interior, who is given broad authority in the administration of the Indiana National Lakeshore. Yet, it does not appear that Beverly Shores is seeking a review of the determination made by the Secretary of Interior with respect to the construction of the parking facility on Lake

---

7. Defendants also indicate that "Congress has not appropriated money for the development of the shuttle bus system in the Indiana Dunes National Lakeshore and therefore, access by means of a shuttle bus system to the Lake View site is precluded." (Defendants' Brief in Reply at p. 5.)

8. The Court also finds that plaintiffs lack standing under Count I. Plaintiffs fail to establish a causal connection between the alleged injury and the proposed action. Plaintiffs do not challenge the Lake View facility itself, only the parking accommodations for the lakeshore development. See, *South East Lake View Neighbors v. Dept. of Housing and Urban Development*, 685 F.2d 1027, 1030 (7th Cir.1982).

Front Drive. Rather, it appears that Beverly Shores disputes the government's fee-ownership interest in the real estate and the incidence of that ownership. However, disputes regarding title to real property to which the United States claims an interest falls within the provisions of the Quiet Title Act, 28 U.S.C. § 2409a. An action pursuant to the APA, seeking judicial review is not the proper method for determining competing claims to real property to which the United States of America claims interest. *Block v. North Dakota ex rel Board of University & School Lands,* 461 U.S. 273–287, f. 22, 103 S.Ct. 1811, 1819, f. 22, 75 L.Ed.2d 840, 853, f. 22 (1983); *Economic Development and Industrial Corp. v. U.S.,* 720 F.2d 1, 3 (1st Cir.1983). Pursuant to 28 U.S.C. § 2409(a), the United States of America is the only proper party defendant and a preliminary injunction is not a proper remedy. Since the Complaint fails to allege that the suit seeks to adjudicate a disputed title, jurisdiction is lacking.[9]

Further, Count II and any reference in the Complaint to the allegation that the defendants intend to establish parking spaces without permission of Beverly Shores and contrary to the Town's parking and traffic ordinances, must fail. The United States Constitution, Article VI, clause 2, known as a "Supremacy Clause", states in pertinent part:

> This constitution, the laws of the United States, which shall be made in pursuance thereof; ... shall be the supreme law of the land and judges in every state shall be bound thereby, anything in the Constitutions or laws of any state to the contrary notwithstanding.

■ "State regulation of federal facilities is allowed only to the extent that Congress has clearly authorized such regulation." *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 108 S.Ct. 1704, 1709, f. 1, 100 L.Ed.2d 158 (1988). The question facing the Court is whether Congress has provided 'clear and unambiguous' authorization for such regulation." *Goodyear,* 108 S.Ct.

at 1709, citing *EPA v. State Water Resources Control Board,* 426 U.S. 200, 211, 96 S.Ct. 2022, 2028, 48 L.Ed.2d 578 (1976). However, nothing in 16 U.S.C. § 1, *et seq.,* or the legislation specific to the Indiana Dunes National Lakeshore, 16 U.S.C. § 460u, *et seq.,* gives the Town of Beverly Shores authorization to impose its parking ordinances upon the government property to be utilized as parking for the Lake View site pursuant to the decision of the Secretary of the Interior for the Indiana Dunes National Lakeshore. Legislation gives the Secretary of the Interior authority, not only to establish, but to administer the Indiana Dunes National Lakeshore to preserve it for educational, inspirational and recreational use of the public. The plaintiffs, however, contend that 16 U.S.C. § 460u–8 gives them the authority to regulate these parking spots. However, this provision merely provides the State of Indiana with civil and criminal jurisdiction and their right to tax persons and non-federal entities within the area, but it does not give the State of Indiana the right to regulate the activities of the United States in the use of its federally owned property or facilities. See, *Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051 (9th Cir.1985); *Borough of Maywood v. U.S.,* 679 F.Supp. 413 (D.N.J.1988); *Laine v. Weinberger,* 541 F.Supp. 599, 604 (C.D.Cal. 1982); and *U.S. v. Town of Windsor, Ct.,* 496 F.Supp. 581 (D.Conn.1980). There is nothing in the statute, 16 U.S.C. § 460u–8, which subjects the federal government to the local ordinances of the Town of Beverly Shores. Plaintiffs also point out that the National Park Service Regulations provide that State traffic and parking laws apply within the park area. See, 36 C.F.R. Ch. 1, § 4.2. They contend that defendants are "forbidden to violate these ordinances". (Plaintiffs' Memo in Response, p. 5) However, as defendants point out, "State law" is defined as "applicable and unconflicting laws, statutes, regulations, ordinances, in-

---

9. Plaintiffs contend that even if jurisdiction is lacking, the Court has pendent jurisdiction. However, since the federal action has been dismissed, the Court, in its discretion, dismisses

any pendent state law claims plaintiffs allege exist. *Marshall Ilsley Trust Co. v. Pate,* 819 F.2d 806, 810–11 (7th Cir.1987).

fractions and codes of the State(s) ..." 36 C.F.R. § 1.4. See also, 36 C.F.R. § 4.10(a). It is apparent that the State parking ordinances conflict with federal use of the property pursuant to the Secretary's decision, the management plan, and studies of the lakeshore development for the Lake View facility. See, 36 C.F.R. 1.2(d). Therefore, the government is not subject to the Town's local ordinances and it is free of the Town's regulations. See also, *Hancock v. Train*, 426 U.S. 167, 178, 96 S.Ct. 2006, 2012, 48 L.Ed.2d 555, 564–65 (1976). Accordingly, defendants Motion to Dismiss Count II is GRANTED.

Based on the foregoing, the defendants' Motion to Dismiss is hereby GRANTED and Counts I and II of the Complaint are DISMISSED for lack of subject-matter jurisdiction, and alternatively, for failure to state a cause of action.