In the
United States Court of Appeals
For the Seventh Circuit


No. 99-3364
Shawnee Trail Conservancy, Illinois Trail Riders,
Horsemen's Council of Illinois, Southern Illinois
Campground and Ranch Owners Association,
and Illinois Federation of Outdoor Resources,

Plaintiffs-Appellants,

v.

United States Department of Agriculture,
United States Forest Service, Daniel Glickman,
Secretary of Agriculture, Michael P. Dombeck,
Chief, United States Forest Service, Robert T.
Jacobs, Regional Forester, Eastern Region
(R-IX), United States Forest Service,
and Louise Odegaard, Supervisor,
Shawnee National Forest,

Defendants-Appellees.


Appeal from the United States District Court
for the Southern District of Illinois, Benton Division.
No. 98-CV-4248-JPG--J. Phil Gilbert, Chief Judge.


Argued March 29, 2000--Decided July 25, 2000


Before Flaum, Ripple, and Kanne, Circuit Judges.

Flaum, Circuit Judge.  The Shawnee Trail
Conservancy, the Illinois Trail Riders, the
Horsemen's Council of Illinois, the Southern
Illinois Campground and Ranch Owners Association,
and the Illinois Federation of Outdoor Resources
brought suit in federal district court under both
the United States Constitution and the
Administrative Procedure Act ("APA"), 5 U.S.C.
sec. 701 et seq., alleging that the defendants
lacked the constitutional and statutory authority
to designate certain areas of the Shawnee
National Forest (the "Shawnee") as Research
Natural Areas ("RNAs"). The district court
dismissed both of the plaintiffs' claims for lack
of subject matter jurisdiction, finding that the
plaintiffs' constitutional claim was an adverse
claim of title against the United States and
therefore had to be brought pursuant to the Quiet
Title Act of 1972 ("QTA" or the "Act"), 28 U.S.C.
sec. 2409a et seq., and that the plaintiffs

failed to exhaust their administrative remedies for purposes of their APA claim. For the reasons stated herein, we affirm the decision of the district court.

I.  Facts

The dispute in this case centers on the use of the Shawnee National Forest, an area that consists of approximately 265,135 acres in southern Illinois. The Shawnee is managed by the United States Forest Service according to a land use and management plan required by statute. According to the applicable regulations, the goal of the land use and management plan is to "maximize[ ] long term net public benefits in an environmentally sound manner."

In November 1986, the Forest Service issued its 1986 Land and Resource Management Plan. Among other things, the Plan proposed that twelve areas in the Shawnee, including the Atwood Ridge area and the Burke Branch area, be designated RNAs. RNAs are areas of land within a National Forest on which the Forest Service allows natural conditions to prevail in order to promote biological diversity, research and monitoring, and education. The Chief of the Forest Service followed the recommendations of the 1986 Plan and established the Atwood Ridge RNA in September 1990 and the Burke Branch RNA in March 1991.

The Forest Service has designated a total of eighty-one areas in the Shawnee as RNAs. In order to protect these areas, mountain bikes, all-terrain vehicles, and off-road motorcycles are prohibited. In addition, equestrian use is limited to designated trails. On January 31, 1997, the Forest Service took the additional step of closing forty of the Shawnee's RNAs, including the Atwood Ridge RNA and the Burke Branch RNA, to all equestrian use.

In July 1998, the plaintiffs filed suit in federal district court challenging the Forest Service's decision to restrict access to the Atwood Ridge and Burke Branch areas and its decision to designate those areas as RNAs. The district court dismissed the plaintiffs' constitutional claim on the ground that it challenged the United States' title to land and consequently had to be brought under the QTA. The district court also dismissed the plaintiffs' APA claim, holding that they failed to exhaust their administrative remedies. This appeal followed.

II.  Analysis

We review de novo the district court's grant of the defendants' motion to dismiss for lack of

subject matter jurisdiction. See Sapperstein v. Hager, 188 F.3d 852, 855 (7th Cir. 1999). In considering the defendants' motion to dismiss, we "must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff[s]." Capital Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993).

A.  The Quiet Title Act

The plaintiffs' complaint alleged that the Forest Service lacks the authority to restrict the use of certain roads in the Atwood Ridge RNA and the Burke Branch RNA. According to the plaintiffs, these roads are subject to both public and private easements and rights-of-way that pre-date the creation of the Shawnee. The plaintiffs contend that because these easements and rights-of-way have been continually used and have not been vacated or abandoned, the right to control the use of the roads in the Atwood Ridge RNA and the Burke Branch RNA are not held by the Forest Service. In other words, the plaintiffs contend that the Forest Service cannot restrict the use of the roads in the Atwood Ridge and Burke Branch areas because they do not own the property rights necessary to make decisions concerning their incidents of use.

The district court did not reach the plaintiffs' constitutional claim on the merits, but rather concluded that it did not have subject matter jurisdiction over this claim because the plaintiffs' argument represented a clear challenge to the United States' ownership of the land in question. According to the district court, all such challenges must be brought pursuant to the QTA. Because the plaintiffs did not bring their claim under the QTA, but rather under the Constitution, the district court held that it could not consider the issue of title to the land. The district court further found unpersuasive the plaintiffs' attempt to structure their claim as a constitutional challenge to the federal government's regulatory authority, and not to its title. On appeal, the plaintiffs contend that this decision was erroneous and that the district court properly had subject matter jurisdiction over their constitutional challenge to the restrictions imposed by the Forest Service.

The QTA operates as a limited waiver of sovereign immunity in cases where a party seeks to adjudicate a title dispute to real property in which the United States claims an interest. Specifically, the Act provides that: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the

United States claims an interest, other than a security interest or water rights." 28 U.S.C. sec. 2409a(a). In its decisions interpreting the QTA, the Supreme Court has made clear that, through its adoption of the Act, "Congress intended . . . to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." Block v. North Dakota, 461 U.S. 273, 286 (1983) (emphasis added). While the plaintiffs concede that the QTA is the exclusive vehicle for suits challenging the United States' title to real property in certain contexts, they contend that this exclusivity principle does not apply when the party bringing the suit is not an adverse claimant.

The plaintiffs contend that the "adverse claimants" language in the Supreme Court's Block opinion is an important limitation on the exclusivity of the QTA. The plaintiffs admit that the Act is the exclusive means by which a party claiming a property interest in land in which the United States also maintains an interest may challenge the United States' assertion of title. However, the plaintiffs argue that the QTA does not limit their ability to challenge the United States' regulatory authority by bringing suit pursuant to other statutes or the Constitution as long as they do not seek to quiet title in themselves. Under this theory, because the plaintiffs do not claim that they own the easements or rights-of-way over the roads in the Atwood Ridge RNA and the Burke Branch RNA, the plaintiffs' suit need not be brought pursuant to the QTA.

In support of this argument, the plaintiffs do not cite any case law specifically limiting the exclusivity of the QTA to suits in which the plaintiffs seek to quiet title in themselves. Instead, they rely on cases that have entertained challenges to the regulatory authority of the United States without addressing the QTA. See, e.g., Wilkensen v. Department of the Int., 634 F.Supp. 1265 (D. Colo. 1986); Stupak-Thrall v. Glickman, 988 F.Supp. 1055 (W.D. Mich. 1997). Although we recognize that these cases resolved title disputes similar to the one around which this case centers without reference to the QTA, it is significant that those cases give no indication that the QTA was ever raised as an issue. In circumstances where a court assumes jurisdiction without addressing a jurisdictional issue, that assumption of jurisdiction is of limited precedential value. See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) ("[T]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silento.").

Because we find the precedent cited by the plaintiffs to be of little value, the merits of their argument turn on the persuasiveness of their definition of "adverse claimants." According to the plaintiffs, the plain meaning of "adverse claimants" does not include parties who, although challenging the federal government's right to regulate land, do not attempt to quiet title in themselves. Although we agree that the interpretation offered by the plaintiffs is a plausible one, we do not believe that the language of the Supreme Court's opinion in Block is as clear as the plaintiffs contend. It is true that the plaintiffs do not assert that they own the land, and in that sense they are not making a claim to title on behalf of themselves that is adverse to the government's asserted interest. However, the plaintiffs do claim that certain third parties own the land, and not the government, and this in itself represents an assertion of title that runs adverse to the government. In these circumstances, the plain meaning of the phrase "adverse claimants" does not adequately answer the question before us.

In considering this very issue, the Ninth Circuit rejected the argument made by the plaintiffs and held that the QTA applies any time a party seeks a title determination regarding real property in which the United States asserts an interest. See Metropolitan Water Dist. v. United States, 830 F.2d 139, 143-44 (9th Cir. 1987) (per curiam), aff'd sub nom. California v. United States, 490 U.S. 920 (1989). In that case, the Metropolitan Water District sought to prevent an Indian tribe from gaining additional water rights as the result of an expansion in the tribe's reservation boundaries. See id. at 141. Although recognizing that the water district was "not seeking to quiet title in itself," the court held that the QTA applied because the water district "s[ought] a determination of the boundaries of the Reservation" and "[t]he effect of a successful challenge would be to quiet title in others than the Tribe." Id. at 143. In a later opinion, the Ninth Circuit noted that "Metropolitan Water District expanded the application of the QTA to govern suits involving plaintiffs who, while not seeking to quiet title in themselves, might potentially affect the property rights of others through successfully litigating their claims." Alaska v. Babbitt, 38 F.3d 1068, 1074 (9th Cir. 1994).

Although no other court has considered the issue presented to us in as direct a fashion as the Ninth Circuit, several courts have indicated that the Ninth Circuit's broad reading of the exclusivity of the QTA is correct. In a suit for money damages based on an allegedly invalid

government sale of land, the Supreme Court rejected the plaintiff's attempts to avoid the QTA on the ground that resolution of the case entailed determining who held valid title to the land in question. See United States v. Mottaz, 476 U.S. 834, 841-43 (1986) (noting that "the claim for title is the essence and bottom line of respondent's case"). Similarly, in cases where the QTA is raised as a jurisdictional issue, other federal courts consistently apply the QTA in circumstances where parties do not seek to quiet title in themselves. See Rosette, Inc. v. United States, 141 F.3d 1394, 1397 (10th Cir. 1998) (dismissing a declaratory judgment action brought outside the QTA because the plaintiff's claims were "all linked to the question of title"); Nevada v. United States, 731 F.2d 633, 636 (9th Cir. 1984) (applying the QTA to a Property Clause claim where, in order to succeed, the plaintiff "would have to show that the United States lacked title" to the property in dispute); Hat Ranch, Inc. v. Babbitt, 932 F.Supp. 1, 3 (D.D.C. 1995), aff'd sub nom. Hat Ranch, Inc. v. United States, 102 F.3d 1272 (D.C. Cir. 1996) (refusing to consider declaratory judgment action where "[t]he authority to levy grazing fees depends upon ownership of the land" and where "[i]n order to decide who is entitled to assess and collect grazing fees, th[e] Court would be required to decide who owns the [disputed lands]"); Town of Beverly Shores v. Lujan, 736 F.Supp. 934, 944 (N.D. Ind. 1989) (dismissing an APA claim for lack of subject matter jurisdiction because "an action pursuant to the APA . . . is not the proper method for determining competing claims to real property to which the United States of America claims interest"). It thus appears that the majority of courts that have considered the QTA in the context of claims that do not seek to quiet title in the party bringing the action have nonetheless found the Act applicable, and we find the reasoning of these cases persuasive.

In adopting the QTA, Congress waived the United States' sovereign immunity to suits challenging the United States' title to land. See Lombard v. United States, 194 F.3d 305, 308 (1st Cir. 1999). However, this waiver of sovereign immunity is limited, most importantly by the Acts' twelve year statute of limitations on title claims, 28 U.S.C. sec. 2409a(g), and by the preservation of immunity in cases where the United States claims an interest in land as trust or restricted Indian land, 28 U.S.C. sec. 2409a(a). To allow claimants to avoid the QTA by characterizing their complaint as a challenge to the federal government's regulatory authority would be to allow parties to seek a legal determination of disputed title without being subject to the

limitations placed on such challenges. See Rosette, 141 F.3d at 1397 (stating that allowing a declaratory judgment action "would render the Quiet Title Act's statute of limitations meaningless"); Nevada, 731 F.2d at 636 (arguing that to allow a Property Clause challenge outside the QTA "would be to render [that Act's] statute of limitations meaningless"). "'It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.'" Block, 461 U.S. at 285 (quoting Brown v. GSA, 425 U.S. 820, 833 (1976)). Because we believe that Congress intended for suits that require resolution of a disputed claim to real property in which the United States claims an interest to be brought under the QTA, we hold that the district court properly dismissed the plaintiffs' constitutional challenge for lack of subject matter jurisdiction.

B.  The Administrative Procedure Act

The plaintiffs next contend that the Forest Service violated the APA in acting arbitrarily, capriciously, and not in accordance with the law when it designated the Atwood Ridge and Burke Branch areas of the Shawnee as RNAs. The district court dismissed this APA claim for lack of subject matter jurisdiction, finding that the plaintiffs failed to exhaust their administrative remedies before filing suit in federal district court. The plaintiffs appeal this holding, arguing that the district court erred when it refused to excuse the plaintiffs' failure to exhaust their administrative remedies because, according to the plaintiffs, pursuing those administrative remedies would have been futile.

The requirement of administrative exhaustion is a traditional common law doctrine that has now been codified in section 10(c) of the APA, 5 U.S.C. sec. 704. Although section 10(c) only permits review of agency actions that are "final," any definitive agency decision is considered "final," and therefore reviewable, unless the agency's regulations require exhaustion as a prerequisite to judicial review. See Darby v. Cisneros, 509 U.S. 137, 153 (1993). In this case, the relevant Forest Service regulation provides that "any filing for Federal judicial review of a decision subject to review under this part is premature and inappropriate unless the plaintiff has first sought to invoke and exhaust the procedures available under this part." 36 C.F.R. sec. 217.18. Because the Forest Service regulations explicitly require exhaustion as a prerequisite to judicial review, and because the plaintiffs in this case did not pursue the

available administrative appeals to the challenged RNA designations, the district court was correct in applying an administrative exhaustion requirement to the plaintiffs' APA claim. See Glisson v. United States Forest Service, 55 F.3d 1325, 1328 (7th Cir. 1995) (applying the administrative exhaustion requirement of the APA in circumstances where Forest Service regulations require such exhaustion).

The plaintiffs do not challenge the conclusion that an administrative exhaustion requirement could apply to their case, but rather contend that this requirement should have been waived because any administrative appeal would have been futile. See, e.g., McCarthy v. Madigan, 503 U.S. 140, 146-49 (1992) (discussing waiver of the exhaustion requirement in circumstances where an appeal is futile); Wilczynski v. Lumbermens Mutual Casualty Co., 93 F.3d 397, 402 (7th Cir. 1996) (recognizing the futility exception to administrative exhaustion). According to the plaintiffs, the United States Department of Agriculture and the Forest Service were bound by the terms of a 1988 settlement agreement with various environmental groups that precluded them from re-opening roads in the Burke Branch and Atwood Ridge areas. The plaintiffs argue that because the defendants are prohibited by a pre-existing settlement agreement from changing the RNA designations that the plaintiffs now challenge, any appeal to the Forest Service seeking to alter those designations would have been futile.

Although we do not believe that the district court had the power to waive the statutorily-mandated exhaustion requirement of the APA, see Glisson, 55 F.3d at 1327 (contrasting the flexible common law doctrine of administrative exhaustion with the "inflexible command of a statute"), the plaintiffs have not demonstrated that the district court erred in applying administrative exhaustion even if we assume arguendo that the district court had the discretion to excuse that failure on the ground of futility. "In order to come under the futility exception, the [plaintiffs] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." Smith v. Blue Cross & Blue Shield United of Wisc., 959 F.2d 655, 659 (7th Cir. 1992). Furthermore, "the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court and may be disturbed on appeal only when there has been a clear abuse of discretion." Powell v. AT&T Comm., Inc., 938 F.2d 823, 825 (7th Cir. 1991).

After a review of the record, we conclude that the district court did not abuse its discretion in requiring the plaintiffs to exhaust their administrative appeals. While it is true that the 1988 settlement agreement does not appear to allow the Forest Service to re-open roads in the Burke Branch and Atwood Ridge areas, the agreement does not give any party the right to compel the Forest Service's compliance with that obligation. It is possible that had the plaintiffs pursued the available avenues for administrative relief, the Forest Service would have altered its decision to designate the Burke Branch and Atwood Ridge areas as RNAs and would have re-opened the closed roads in those areas. The result of such an action would have been a possible breach of the 1988 settlement agreement and a consequent nullification of that agreement, but the plaintiffs would have received the relief that they sought. In this case the Forest Service's 1988 settlement agreement presents an obstacle to the administrative actions requested by the plaintiffs, but it does not render the defendants powerless to grant the plaintiffs' request. Under these circumstances, we cannot conclude that the district court erred in refusing to apply the futility exception to excuse the plaintiffs' failure to exhaust their administrative remedies.

III.  Conclusion

The district court correctly dismissed the plaintiffs' QTA and APA claims for lack of subject matter jurisdiction. We accordingly AFFIRM the decision of the district court.