**Grant A. SCHULKE, Master Sergeant Ret., and Regina H. Schulke, Plaintiffs-Appellants,**

v.

**UNITED STATES of America et al., Defendants-Appellees.**

No. 75–1170.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 8, 1976.

Decided Nov. 8, 1976.

Grant A. Schulke and Regina H. Schulke, pro se.

James L. Treece, U. S. Atty., Gary M. Jackson, Asst. U. S. Atty., Denver, Colo., for appellee.

Before PICKETT, Senior Circuit Judge, and SETH and McWILLIAMS, Circuit Judges.

PER CURIAM.

This is an appeal from an order of the United States District Court for the District of Colorado dismissing Mr. Grant A. Schulke's complaint for mandamus, and declaratory and injunctive relief. We affirm for the reasons set forth below.

It will be helpful to the resolution of what we perceive to be the narrow legal issue presented by this appeal to sketch briefly the lengthy factual background which led to the filing of this suit.

Mr. Schulke is now retired from active duty with the United States Air Force. Prior to his retirement, he was a career master sergeant assigned to the 1910th Communications Squadron, Air Force Communications Service, Lowry Air Force Base, (LAFB), Denver, Colorado. His duty station was Buckley Air National Guard Base, Denver, Colorado. We will refer to Mr. Schulke as Sergeant Schulke in this opinion.

Sergeant Schulke in August 11, 1973 went to the Judge Advocate General's office at LAFB. His purpose was to request legal assistance in bringing court martial charges against former President Richard M. Nixon for his alleged complicity in the Watergate scandal. This request, with several other factors which need not be set forth here, led to Sergeant Schulke's being interviewed by an Air Force psychiatrist, Doctor Paul Hulsko. Doctor Hulsko felt as a result of the interview that a more extensive examination of Sergeant Schulke was needed. He therefore referred Sergeant Schulke to the Fitzsimons Army Medical Hospital in Denver.

Sergeant Schulke entered Fitzsimons on August 13, 1973. He underwent rather extensive tests covering several days. Following his hospitalization, the news media learned that Sergeant Schulke had been hospitalized immediately after his request to have court martial charges preferred against former President Nixon. There followed much speculation by the media as to whether Sergeant Schulke's hospitalization was a result of his request.

Sergeant Schulke was released from Fitzsimons on an indefinite pass on August 22, 1973, approximately 10 days after his initial commitment. He was permanently released as an out-patient on October 12, 1973.

On October 18, 1973, Sergeant Schulke appeared before an Army medical evaluation board. The Board concluded that he was suffering from involutional psychosis and should be given a medical discharge. This recommendation was adopted by an informal Air Force medical evaluation board, which recommended to the Secretary of the Air Force that Sergeant Schulke be retired with 30% permanent medical disability. He was advised of this recommendation on November 19, 1973.

Sergeant Schulke felt that the Board's conclusion was wrong. Moreover, he felt that to accept the recommendation would be a fraud on the government, since he was scheduled to retire from active duty approximately 2 months from the date of the recommendation. He therefore decided to appeal the board's finding to an Air Force formal medical evaluation board. To shorten the story, the formal board, after receiving further evidence, including the results of further tests it ordered, found Sergeant Schulke fit for active duty. He was ordered returned to his former station.

Upon his return to active duty, Sergeant Schulke earnestly sought to have court martial charges brought against the military personnel responsible for his hospitalization. He believed his commitment was based solely upon his effort to have former President Nixon court martialed. He further believed that the people responsible for his hospitalization were acutely aware of the precarious grounds upon which he was committed. Sergeant Schulke felt that following the news media's discovery of his hospitalization, an effort was made to cover up the actual reason with a fabricated medical reason. He claimed that his return to active duty was proof that the medical reason was fabricated.

Sergeant Schulke's efforts to have charges brought within the military were to no avail. He was notified by both the Air Force and Army general court martial convening authorities that in their opinion his hospitalization had been in accordance with existing Air Force and Army regulations. He was further advised that their investigations failed to reveal grounds which would support court martial or other disciplinary proceedings against any of the people involved with his hospitalization. He then turned to the federal court for relief.

Our review of the record leads us to the inescapable conclusion that the only valid jurisdictional basis in the district court was 28 U.S.C. § 1361, commonly referred to as the mandamus statute. The narrow scope of our inquiry, therefore, is whether the district court erred in refusing to grant such relief. Appellant, in addition to seeking mandamus relief, sought numerous forms of declaratory and injunctive relief. As discussed below, we are of the opinion that such claims lacked the necessary jurisdictional requirements to be heard in federal court.

▮ Mandamus relief is appropriate only when the person seeking such relief can show a duty owed to him by the government official to whom the writ is directed that is ministerial, clearly defined and peremptory. *Scarafiotti v. Shea*, 456 F.2d 1052 (10th Cir. 1972); *Prairie Band of Pottawatomie Tribe of Indians v. Udall*, 355 F.2d 364 (10th Cir. 1966). The relief sought by Sergeant Schulke was a writ directing the general court martial convening authorities at LAFB and Fitzsimons to bring court martial or other disciplinary charges against those persons Sergeant Schulke felt wrongfully had him committed to Fitzsimons.

▮ The role of the federal judiciary with respect to the internal affairs of the military is narrow and restricted. *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Discretionary decisions of the military are not subject to review by civilian courts. *Barber v. United States*, 412 F.2d 775 (3rd Cir. 1969); *Smith v.*

*Resor*, 406 F.2d 141 (2nd Cir. 1969). A decision as to whether or not in a given case to prefer charges under the Uniform Code of Military Justice, 10 U.C. 801 et seq., necessarily involves the exercise of discretion. Such discretion is not subject to review by a writ of mandamus. See *Arnheiter v. Chafee*, 435 F.2d 691 (9th Cir. 1970) and *Moore v. Schlesinger*, 384 F.Supp. 163 (D.C.Col.1974).

▮ Appellant also sought to have certain Army and Air Force regulations declared unconstitutional and to have the President direct the Secretaries of the Air Force and Army to rewrite such regulations. The declaratory relief statute, 28 U.S.C. § 2201, is not a jurisdictional statute. One seeking relief under the statute must establish a separate and independent basis of jurisdiction, *Barr v. United States*, 478 F.2d 1152, 1156 (10th Cir. 1973); *Groundhog v. Keeler*, 442 F.2d 674, 683 (10th Cir. 1971). The record here fails to show an independent jurisdictional basis. The district court lacked jurisdiction to grant such relief.

When this case was docketed in this court the parties were notified that the appeal would be decided on the original record without oral argument. The parties were invited to submit memoranda in support of their respective positions. Thereafter, appellant submitted his memorandum addressing the issues. We have thoroughly reviewed the files and records and are convinced the district court correctly denied relief. Accordingly, the judgment of the district court is affirmed.