B.R. MACKAY & SONS, INC., a Utah corporation, and Michael T. MacKay, an individual, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. C85–0914G.

United States District Court, D. Utah, C.D.

April 30, 1986.

Richard B. Ferrari, Louise T. Knauer, Salt Lake City, Utah, for plaintiffs.

John F. Cermak, Jr., Gregory C. Diamond, U.S. Atty's. Office, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on March 17, 1986, on defendant United States of America's Motion to Dismiss or to Transfer. John F. Cermak, Jr. and Gregory C. Diamond appeared on behalf of defendant United States of America and Richard B. Ferrari and Louise T. Knauer appeared on behalf of plaintiffs B.R. MacKay & Sons, Inc., and Michael T. MacKay. The issues were thoroughly briefed by plaintiffs and defendant and the parties had opportunity to present extensive oral argument, after which the Court took the mat-

ter under advisement. The Court now being fully advised in the premises, hereby renders its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiff Michael T. MacKay, President of B.R. MacKay & Sons, Inc., was an unsalaried vice-president and director of Film Recovery Systems Corporation ("FRS"), a Delaware corporation based in Elk Grove Village, Illinois. Plaintiff B.R. MacKay & Sons, Inc. ("BRM"), a Utah based corporation, was a 50% shareholder of FRS. FRS extracted silver from used x-ray and photographic film through chemical treatments which included a two percent inorganic cyanide solution and sodium hypoclorite. The waste product of this treatment process was film chips—postage stamp-sized pieces of film. Between October 1981 and February 1982, FRS stored a quantity of those film chips in truck trailers in truck yards in Cook and Lee Counties, Illinois.

On February 10, 1983, Stefan Golob, an FRS employee, died on the job as a result of cyanide inhalation. The Golob death prompted state authorities to begin proceedings against FRS because of the potential health hazard caused by the storage of cyanide treated film chips. Additionally, on November 17, 1983, the Environmental Protection Agency ("EPA") Regional Administrator authorized an immediate removal action of the chips pursuant to 42 U.S.C. §§ 9601 et seq. "to eliminate the release of cyanide bearing leachate to drainage ditches and to prevent release of chips to the environment by structural collapse of the trailers." The removal was begun immediately and was completed sometime prior to June 17, 1985. In addition, on October 19, 1983, a Cook County Grand Jury indicted five former FRS directors, officers and employees, including plaintiff MacKay, for the alleged murder of Stefan Golob. Illinois then requested Mr. MacKay's extradition to stand trial for

murder. Utah's Governor twice refused the extradition request.[1]

Following the cleanup, the United States Department of Justice mailed to each plaintiff herein a demand for reimbursement of response costs incurred by the EPA in connection with the cleanup of the hazardous or potentially hazardous storage sites.[2] By letter dated June 24, 1985, plaintiffs denied responsibility under applicable law. The United States responded by letter dated July 24, 1985, that the case could not be resolved without litigation. Counsel for plaintiffs then contacted the Department of Justice for the purpose of requesting documents from the EPA so that the matter might be resolved without litigation. On July 31, 1985, the Department of Justice hand delivered the pertinent documents to counsel for the MacKays. With the documents was a Department of Justice letter stating the government's clear intention to file a cost recovery action in the near future if settlement discussions failed to resolve the matter.

On August 2, 1985, the plaintiff filed this action seeking a declaratory judgment of nonliability to the United States for the costs incurred in the EPA cleanup. This action also seeks to enjoin the United States from taking any action to compel plaintiffs to pay the response costs at issue. On August 5, 1985, the following working day, the United States initiated a cost recovery action in the Northern District of Illinois against the plaintiffs herein and against Steven J. O'Neil, the President of FRS. That complaint alleges that O'Neil and MacKay, as officers and directors of FRS, managed, controlled and directed its operations which resulted in the storage of some 14 million pounds of waste material containing cyanide which was released or threatened release into the environment and necessitated the cleanup. The complaint also alleges that BRM exercised such dominant control over FRS as to render it the alter ego of FRS. The United States seeks some $235,000 for the cleanup.

Plaintiffs MacKay and BRM, defendants in the Illinois action, moved the District Court for the Northern District of Illinois to dismiss that complaint pursuant to Rule 13(a), Fed.R.Civ.P., to stay that action, or, in the alternative, to transfer the action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Utah. The Illinois Court denied the motions on several grounds, including the fact that that action involves a party defendant that is not present in this action and thus this action cannot resolve the entire matter.

The United States now has moved this court to dismiss the present action for lack of jurisdiction and for failure to state a claim for which relief can be granted. Alternatively, the government asks this Court to exercise its discretion and dismiss the action because of the ongoing Illinois cost recovery action which arguably can resolve the entire matter whereas this action arguably cannot.[3] Finally, the United States moves in the alternative that this Court transfer the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Before we can rule properly on defendant's Motions, this Court must review the applicable statutory framework which forms the

---

1. The indictments were against FRS, BRM, MacKay, Steven J. O'Neil, President of FRS, and three other FRS employees. All individuals, except MacKay, were taken into custody by Illinois law enforcement authorities and were eventually tried and convicted of murder, involuntary manslaughter and reckless conduct in connection with the Golob death.

2. The parties disagree over the danger imposed by the film chips and the propriety of the cleanup. This fact statement is not meant to and does not address the merits of the EPA's claim. At this procedural juncture, the Court would be premature in stating whether the cleanup was conducted within the statutory framework and/or whether plaintiffs are liable to the EPA.

3. The parties disagree over the necessity of Mr. O'Neil's presence in the cost recovery action. Mr. O'Neil presently is in involuntary bankruptcy and is insolvent. Plaintiffs question the government motive for involving Mr. O'Neil and the necessity of his status as a party to the government's action. Those questions are not relevant, however, to the question of whether this court has jurisdiction to hear plaintiffs' action.

basis of the response action and the government's demand for payment.

## STATUTORY BACKGROUND

Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 et seq., in response to increasing concern over the severe environmental and public health effects from improper disposal of hazardous waste and other hazardous substances. While the EPA had authority under other statutes to bring suit and compel cleanup, it lacked the authority and the funding to respond immediately to serious hazards presented by hazardous waste sites before legal determinations of liability were made. *See United States v. Price*, 577 F.Supp. 1103, 1108 (D.N.J.1983). CERCLA was designed to bridge gaps in pre-existing statutes by establishing the authority and the funding for the EPA to take immediate cleanup action, without the need to await adminis-

trative and judicial determinations of liability. *See* S.Rep. No. 848, 96th Cong., 2d Sess. 8, 11–12, 22, 56, 62 (1980). That goal is accomplished through certain provisions of CERCLA. Section 104(a) authorizes the EPA to clean up or otherwise respond[4] to any release or threatened release into the environment of "hazardous substances" or other "pollutants or contaminants." 42 U.S.C. § 9604(a). Section 221(a) establishes the Hazardous Substance Response Trust Fund to finance cleanups pursuant to Section 104. *Id.* § 9631(a). Section 105(8) empowers the President to select at least 400 sites posing the greatest threat to human health and the environment as the top priority among response targets. *Id.* § 9605(8). Section 107 establishes liability rules to allow the government to recover its response costs under Section 104 from responsible parties.[5] *Id.* § 9607.

Assuming one qualifies as a responsible party under the Act, certain affirmative statutory defenses exist that would, if

---

4. When the President (EPA) determines that "there may be an imminent and substantial endangerment to the public health or welfare or the environment of an actual or threatened release of a hazardous substance" at a particular site, he has three options. First, "he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat," through a civil action. 42 U.S.C. § 9606(a). Second, he may issue an administrative order or orders directing the responsible parties to take whatever actions are "necessary to protect public health and welfare and the environment." *Id.* Third, the President may expend superfund money to remove or arrange for removal of the hazardous substances or "take any other response measure consistent with the national contingency plan ... unless the President determines that such removal and remedial action will be done properly by the owner or operator ... from which the release or threat of release emanates...." *Id.* § 9604(a)(1). In this case, the EPA took action under the third alternative.

5. Responsible parties under CERCLA are defined as follows:
    (1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
    (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and
    (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....
42 U.S.C. § 9607(a)(1)–(4).
Responsible parties are liable under CERCLA for:
    (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
    (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
    (C) damage for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
*Id.* § 9607(a)(4)(A)–(C).

proved, altogether preclude liability of the responsible party.[6] Other defenses, it seems, exist against a government claim for reimbursement such as a showing that one is not a responsible party or a showing that the response action was not appropriate according to the terms of the Statute.[7]

## SUBJECT MATTER JURISDICTION AND SOVEREIGN IMMUNITY

The government's primary contentions on its Motion to Dismiss are that this Court lacks subject matter jurisdiction to hear plaintiffs' declaratory judgment action and that the government has not waived sovereign immunity. Defendant urges that plaintiffs' claims can be raised only in defense to a cost recovery action initiated by the government pursuant to establishing liability under section 107 of CERCLA. Preenforcement review of EPA action, the government argues, would thwart the purpose of the Act causing delay in cleanups, increased response costs and discouragement of settlements and voluntary cleanups.

It appears that with the dangers or potential dangers caused by hazardous substances, shooting first and asking questions later was the intent of Congress, making it clear that under CERCLA the EPA should have and has full reign to conduct or mandate uninterrupted cleanups for the benefit of the environment and the populous. S.Rep. No. 848, 96th Cong., 2d Sess 56 (1980), *reprinted in* A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, at 363 ("delay will often exacerbate an already serious situation"; "it is preferable to err on the side of protecting public health, welfare and the environment in administering the response authority of the fund"). In *Lone Pine Steering Committee v. United States Environmental Protection Agency*, 777 F.2d 882 (3rd Cir. 1985) the Court said: "To delay remedial action until the liability situation is unscrambled would be inconsistent with the statutory plan to promptly eliminate the sources of danger to health and environment." Ibid. at 886.

It does not necessarily appear that the policy set forth above can be said to cover the situation presented by the facts of this case. Plaintiffs' action is not a pre-enforcement review of EPA action in the sense that it would cause delay in the cleanup of hazardous material, increased response costs or discouragement of voluntary cleanup although such an action may discourage settlement. Here, the EPA had completed the cleanup and had turned the matter over to the Department of Justice for collection. The statutory goal of quick remedial action in cleaning up hazardous waste sites would not be frustrated by judicial review of the agency action here. The parties were in the process of settlement negotiations immediately before this action was filed. Apparently, plaintiffs considered the settlement discussions to be fruitless, resulting

**6.** The statutory defenses are as follows:
There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of a hazardous substance and the damages resulting therefrom were caused solely by—
(1) an act of God;
(2) an act of war;
(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
(4) any combination of the foregoing paragraphs.
42 U.S.C. § 9607(b).

**7.** This defense, if defense it is, would be a review of or challenge to EPA action.

in the filing.[8] The narrow issue before the Court, then, is whether plaintiffs can obtain judicial review of *final* EPA action for a declaration of liability or non-liability under CERCLA prior to the government's bringing a cost-recovery action.

Plaintiffs assert the following bases in attempting to invoke this Court's subject matter jurisdiction: 28 U.S.C. §§ 1331, 1361; Section 10 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702; Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The government contends that none of those statutes provides a basis for subject matter jurisdiction or a waiver of the government's sovereign immunity. The Court will address plaintiffs' claims seriatim.

### A. *28 U.S.C. § 1331*

■ Plaintiffs seek to invoke this Court's jurisdiction under the general federal question statute. *See* 28 U.S.C. § 1331. Section 1331 grants federal courts original subject matter jurisdiction over civil actions which arise under "the Constitution, laws, or treaties of the United States." However, Section 1331 does not, of itself, waive the government's sovereign immunity from suit. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied sub. nom., Holloman v. Clark*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *Radin v. United States*, 699 F.2d 681, 684–85 (4th Cir.1983); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *De Vilbiss v. SBA*, 661 F.2d 716, 718 (8th Cir.1981). The plaintiff must look to the statute giving rise to the cause of action for such a waiver. Assuming such a waiver is found, for example under the Declaratory Judgment Act, under CERCLA or under the APA, and no contrary intent

were found in the waiving statute, this court then would have subject matter jurisdiction pursuant to Section 1331.

### B. *The Declaratory Judgment Act*

■ Defendant correctly contends that the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, does not establish a separate and independent basis for subject matter jurisdiction. The Tenth Circuit has stated:

It is settled that 28 U.S.C. § 2201 does not confer jurisdiction on a federal court where none otherwise exits. That statute was adopted by Congress to enlarge the range of remedies available in federal court, and does not extend subject matter jurisdiction to cases in which the court has no independent basis for jurisdiction.

*Amalgamated Sugar Co. v. Bergland*, 664 F.2d 818, 822 (10th Cir.1981); *see also Schulke v. United States*, 544 F.2d 453, 455 (10th Cir.1976) ("One seeking relief under the [declaratory judgment] statute must establish a separate and independent basis for jurisdiction").

■ Additionally, the Declaratory Judgment Act does not operate to waive the United States' sovereign immunity. *See, e.g., Balistrier v. United States*, 303 F.2d 617 (7th Cir.1962); *Anderson v. United States*, 229 F.2d 675 (5th Cir.1956). As with 28 U.S.C. § 1331, plaintiff must look to the statute giving rise to the cause of action for such a waiver.

### C. *28 U.S.C. § 1361*

■ Section 1361, characterized as "Action to compel an officer of the United States to perform his duty," provides:

The district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agen-

government's allegedly illicit motive is to assist the state in the criminal action by suing MacKay in Illinois. At this point, the motives of the parties are irrelevant to this proceeding and will not provide a basis for the Court's determination of subject matter jurisdiction.

cy thereof to perform a duty owed to the plaintiff.

The Tenth Circuit has interpreted that statute as "not granting jurisdiction for the purpose of injunctive or declaratory judgment relief." *McQueary v. Laird,* 449 F.2d 608, 611 (10th Cir.1971). The Court further stated, "In order to sustain jurisdiction under [Section 1361], it is necessary for the appellants here to allege and plead that the appellees failed or refused to perform a discretionary duty imposed by law." *Id.* at 611–12. Such mandamus relief "is appropriate only when the person seeking such relief can show a duty owed to him by the government official to whom the writ is directed that is ministerial, clearly defined and peremptory." *Carpet Linoleum & Resilient Tile Layers v. Brown,* 656 F.2d 564, 566 (10th Cir.1981) [quoting *Schulke v. United States,* 544 F.2d 453, 455 (10th Cir. 1976) ]. Plaintiffs' complaint fails to allege a duty owed them by the United States which is ministerial, clearly defined and peremptory. Instead the complaint seeks declaratory and injunctive relief regarding plaintiffs' liability for the cleanup and regarding the government's continuing efforts to obtain reimbursement. Clearly, Section 1361 does not provide plaintiffs the jurisdictional basis they seek.

D. *Section 113(b) of CERCLA*

■ Section 113(b) of CERCLA provides: [T]he United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter...." 42 U.S.C. § 9613(b). By its own terms, it would seem, CERCLA provides this court with subject matter jurisdiction over this controversy. This section, however, does not operate to waive the United States' sovereign immunity.[9] Once again,

9. The government concedes that CERCLA does contain a specific but limited waiver of sovereign immunity, as follows:

Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under this section. 42 U.S.C. § 9607(g).

as with 28 U.S.C. § 1331(a), this section does not place the action squarely before the court. Plaintiffs must point to a specific waiver of sovereign immunity before they may proceed against the United States.

E. *The APA*

■ Finally, plaintiffs assert that the APA constitutes a waiver of sovereign immunity and provides this Court an additional basis for subject matter jurisdiction. Section 10 of the APA provides, in pertinent part:

A person ... adversely affected ... by agency action ... is entitled to judicial review thereof. An action in a Court of the United States seeking relief other than money damages and stating a claim that an agency ... acted or failed to act ... under color of legal authority shall not be dismissed nor relief denied on the ground that it is against the United States.... 5 U.S.C. § 702.

Section 10, however, denies judicial review of agency action whenever the relevant statute precludes judicial review. *See* 5 U.S.C. § 701(a)(1). The United States Supreme Court has expressly recognized this statutory schizophrenia in *Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984):

The APA confers a general cause of action upon persons "adversely affected or aggrieved by agency action within the meaning of the relevant statute," 5 U.S.C. § 702, but withdraws that cause of action to the extent the relevant statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1).

Plaintiffs attempt to make more out of this provision than can reasonably be read into it by arguing that the language "including liability under this section" waives sovereign immunity and makes the United States liable for breaches of CERCLA "by carrying out a removal action inconsistent with the National Contingency Plan and by improperly denominating plaintiffs as responsible parties." This court does not read that breadth into the statute.

Accordingly, this Court must ascertain whether the relevant statute, CERCLA, precludes judicial review to invoke 5 U.S.C. § 701(a)(1).

The Supreme Court has explained the relevant factors a Court should consider in such a determination:

> Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.

*Block*, 104 S.Ct. at 2454. Because we have determined that the agency action was final, we run into the conceptual question of whether CERCLA expresses an intent that final agency action not be subject to judicial review or whether the intent is that only EPA action that indeed is final be subject to judicial review. Whether the statute allows judicial review of agency action should not be determined by the particular facts of this case but rather by the criteria set forth in *Block*. A reading of the statute in light of its structure and statutory scheme, its objectives, the legislative history, and the nature of the administrative action suggests a preclusion of judicial review even of final agency action. The statute, its structure and the legislative history make clear that the EPA should not be hindered, delayed or thwarted prior to its bringing a cost-recovery action in responding to the dangers to the environment and populous presented by hazardous substances, pollutants or contaminants that are released or threaten release into the environment. Voluntary cleanup and settlement of disputes are also encouraged. Here the parties were still apparently engaged in settlement discussions when the action was filed. In all events, the philosophy of the statute is that until the government initiates a cost-recovery action, a potential responsible party cannot obtain judicial review of the agency action. However, once the cost-recovery action is brought, the alleged responsible party can assert all its statutory and non-statutory defenses and can obtain a complete declaration of its rights and liabilities.

The government cites several cases for the proposition that the United States cannot be sued under CERCLA and that a potential responsible party must await a cost-recovery action by the government before liability for the cleanup can be determined. *See, e.g., Wheaton Industries v. United States Environmental Protection Agency*, 781 F.2d 354 (3d Cir.1986) (EPA's refusal to allow appellant to perform and control remedial investigation/feasibility study was not subject to judicial review under CERCLA or the APA until the government initiates a cost-recovery action); *Lone Pine Steering Co. v. United States Environmental Protection Agency*, 777 F.2d 882 (3d Cir.1985) (EPA's rejection of appellant's proposed work plan in favor of the EPA-devised work plan was not reviewable under CERCLA until the EPA filed suit for reimbursement of costs because pre-enforcement review would frustrate the statutory goal of quick remedial action in clearing up hazardous waste sites); *J.V. Peters & Co. v. Administrator, E.P.A.*, 767 F.2d 263 (6th Cir.1985) (review of EPA decision to take remedial action is not available prior to a governmental suit for liability under Section 107(a) of the Act); *accord Wagner Electric Corp. v. Thomas*, 612 F.Supp. 736 (D.Kan.1985) ("the reported district court decisions are virtually unanimous in holding that a federal court lacks subject matter jurisdiction to review the merits of a CERCLA order prior to EPA's seeking to enforce that order"). Each of those cases interpreted the statute as precluding altogether judicial review of agency action. This court is persuaded by the conceptual analysis of those cases concerning the intent of CERCLA and therefore finds that the statute does not contemplate or allow review of final agency action prior to a government cost-recovery action. Therefore, the APA does not provide plaintiffs with a waiver of the sovereign immunity of the United States. Being without jurisdiction, the Court dismisses plaintiff's action.

IT IS SO ORDERED.