**VOLUNTARY PURCHASING GROUPS, INC., Plaintiff–Appellee,**

v.

**William K. REILLY, Administrator, United States Environmental Protection Agency, et al., Defendants–Appellants.**

No. 89–1002.

United States Court of Appeals, Fifth Circuit.

Nov. 27, 1989.

---

Michael P. Healy, Anne S. Almy, Attys., Appellate Section, Land & Natural Resources Div., Washington, D.C., for defendants-appellants.

Stephen L. Tatum, Ralph H. Duggins, T. Lynn Stuck, Jeff P. Prostok, Cantey & Hanger, Ft. Worth, Tex., for plaintiff-appellee.

Before KING, GARWOOD, and DAVIS, Circuit Judges.

KING, Circuit Judge:

Defendants-appellants, the Environmental Protection Agency and the Administrator and Regional Administrator of that agency (collectively, the EPA), appeal the district court's refusal to dismiss the suit of the plaintiff-appellee, Voluntary Purchasing Groups, Inc. (VPG), seeking a declaratory judgment that it is not liable for the EPA's response actions in connection with a site cleaned up by the EPA. Finding that the district court lacks subject matter jurisdiction, we reverse and direct the district court to dismiss VPG's suit.

## I. FACTS AND PROCEDURAL BACKGROUND

From 1969 until 1981, 3502 Rogerdale Road[1] (the Rogerdale Road site) in Houston, Texas was used to process pesticides and herbicides. A number of hazardous substances, including phenols, toluene, sulfuric acid, elemental arsenic, several arsenic compounds, methyl chloride, cyclohexanone, betanapthylamine, and triethanolamine, were "processed" and stored in tanks and drums at this site. Since 1983, the Rogerdale Road site has been listed on the National Priorities List (NPL) of sites.[2]

In September 1981, because of flood conditions, a release[3] or the substantial threat of release of hazardous substances prompted the EPA to undertake an emergency response action[4] at the Rogerdale Road site. The EPA removed all contaminated soil, drums and tanks containing hazardous substances, drained the ponds on the site, and conducted a remedial investigation to determine, among other things, the existence and extent of releases. The EPA also installed a clay cap at the site and improved the dike system. In total, as of September 1987, the EPA's emergency removal action used about $2,000,000 of Superfund money.

VPG, operating as a farmers' co-op making lawn, garden, and farm chemicals, is one of the parties identified by the EPA as potentially responsible for the Rogerdale Road site. In 1981—under EPA supervision—VPG removed certain equipment owned by it from the Rogerdale Road site. On or about August 1, 1984, the EPA sent VPG a letter relating the occurrences at the Rogerdale Road site and indicating that VPG might be held a responsible party. This letter contained specific language indicating that it was not a final determination of legal liability. A similar letter, indicating that remedial alternatives for the Rogerdale Road site were being considered, was received by VPG in January 1987. Both of these letters contained language urging the recipient voluntarily to perform work to abate releases.

On January 25, 1988, the EPA sent VPG and nine other parties that it had identified as potentially responsible for the Rogerdale Road site (potentially responsible parties or PRPs) letters indicating that the emergency response action in connection with the Rogerdale Road site had been completed. Each entity receiving this letter was informed that it was one of the parties the EPA believed to be liable for costs in rela-

1. Also known as the Crystal Chemical Company site—after the company that operated there.

2. The EPA can only use Superfund money to perform remedial actions ("excluding remedial planning activities pursuant to CERCLA § 104(b)") for sites on the NPL. 40 C.F.R. §§ 300.66 and 300.68 (1988). Under section 101(24) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675, as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. 99–499, 100 Stat. 1613 (Oct. 17, 1986), "remedy" or "remedial action" is defined, in relevant part, as follows:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.

42 U.S.C. § 9601(24).

3. Under section 101(22) of CERCLA, as amended by SARA, a release is defined as follows:

> The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)....

42 U.S.C. § 9601(22).

4. Response actions are divided into two broad categories: (1) removal—aimed at preventing environmental damage in the short-term (*see* 42 U.S.C. § 9601(23)) and (2) remedial—focused on permanently cleaning up a site (see, *supra*, note 2). CERCLA explicitly includes enforcement activities in its definition of response actions. Section 101(25) of CERCLA, as amended by SARA, *defines response as follows:*

> The terms "respond" or "response" means (sic) remove, removal, remedy, and remedial action, all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto.

42 U.S.C. § 9601(25).

tion to the cleanup performed by the EPA. The EPA's letter to VPG alleged that VPG "either arranged for disposal or treatment of hazardous substances at the facility, own or operate the facility, or owned or operated the facility at the time of disposal of hazardous substances." The letter further demanded payment—from either VPG alone or in conjunction with other PRPs— for expended Superfund money. In addition, the letter stated that VPG would be liable in the event that future remedial actions took place. The letter closed by stating that if no response was received by February 24, 1988, the EPA would "assume that you [VPG, in this case] decline to reimburse the Fund for site expenditures and we may pursue civil litigation against you."

Though VPG did not contact the EPA about this letter, on February 24, 1988, it filed the instant suit in the Northern District of Texas seeking a declaratory judgment that it is not a responsible party under the CERCLA[5] for the Rogerdale

Road site and that it is not liable for any costs associated with the cleanup of that site.[6] VPG alleged that it had leased certain equipment to the Crystal Chemical Company (Crystal) and that the lease had terminated with Crystal's bankruptcy in 1981—at which point VPG, under EPA supervision, removed its equipment. VPG further claimed that it had no hand in the operation of the Rogerdale Road premises, no supervisory, managerial, or financial connection with the corporation except that "VPG's income from rental of personal property was partly based on a percentage of profits received ... from sale of product produced in part, by use of, the leased equipment." Additionally, VPG asserted that it "neither generated nor disposed of hazardous waste nor knew that Crystal allegedly disposed of hazardous waste."

On April 1, 1988, the United States filed suit pursuant to sections 104 and 107 of CERCLA against seven of the ten entities identified as PRPs in the January 1988

---

5. The EPA relied on section 107 in stating that VPG is a responsible party. VPG asserted that such reliance was misplaced. The relevant portion of section 107 provides as follows:

> (a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date
>
> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
>
> (A) all costs of removal or remedial action incurred by the United States Government

> or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
>
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.
>
> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date of which interest accruing under this subsection commences.

42 U.S.C. § 9607(a).

6. In addition, VPG requested attorneys' fees.

letter—including VPG—in the Southern District of Texas [7] to recover past response costs and declare the defendants liable for future costs incurred in relation to abatement of release or threatened release of hazardous substances at the Rogerdale Road site.[8] In this action, the government alleges that VPG "owned the processing plant and equipment used by Crystal in the formulation of pesticides and herbicides...."

After receiving an extension of time to respond, on April 24, 1988, the EPA moved for dismissal of VPG's suit (pending in the Northern District of Texas) under Federal Rule of Civil Procedure 12(b)(1) of VPG's suit on the grounds that the district court lacked subject matter jurisdiction because VPG's suit sought "pre-enforcement review ... precluded by Congress and because the action challenged by the plaintiff [VPG] does not constitute final agency action subject to judicial review." In the alternative, the EPA requested that the case be transferred to the Southern District of Texas where it could be considered in conjunction with the United States' cost-recovery action in that district. On June 29, 1988, the District Court for the Northern District of Texas denied dismissal.

The EPA again applied for a transfer of jurisdiction and, on August 3, 1988, it was denied. On August 12, 1988, the EPA answered the VPG complaint and filed counterclaims under sections 104 and 107 of CERCLA against VPG—seeking reimbursement for past response costs and a declaration of VPG's liability for future response costs that may be incurred by the EPA in relation to the Rogerdale Road site. In its counterclaim, the EPA alleged that VPG "owned the processing plant and equipment used [at the Rogerdale Road site] in the formulation of pesticides and herbicides...." The EPA also claimed that VPG "was entitled to a portion of Crystal's profits and to a portion of the products manufactured at the Rogerdale Road site."

Relying on the pendency of the action in the Northern District, VPG moved to dismiss the United States' suit against it in the Southern District on August 17, 1988.

On September 1, 1988, the EPA filed a motion requesting the district court in the Northern District to amend its June 29, 1988 order refusing to dismiss this case and to certify it for interlocutory appeal under 28 U.S.C. § 1292(b). On September 6, 1988, the EPA requested reconsideration of the denial of change of venue. The reconsideration of the change of venue was denied, but on November 4, 1988, the district court in the Northern District granted the section 1292(b) certification. Subsequently, on January 3, 1989, this court entered an order permitting EPA's interlocutory appeal.

A stay of all proceedings was issued by the district court in the Southern District in relation to the cost recovery action in that district on February 8, 1989 until completion of this appeal.

## II. STANDARD OF REVIEW

The EPA moved to dismiss VPG's suit under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. We note that in this circuit it is well settled that:

> The district court ... has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). In the case *sub judice*, the district court concluded that based on its review of the pleadings

---

7. *United States v. Cumberland Int'l Corp.*, Civil Action No. H–88–1147 (S.D.Tex.).

8. In May 1988, the Southern Pacific Transportation Company, one of the defendants in the United States' action to recover for the emergency response and future remedial costs, filed CERCLA and common law cross-claims against VPG and a third party complaint against five additional defendants.

and law, the EPA's motion was "not well-taken and should be denied." As the district court made no findings of fact, we review its decision not to dismiss to determine "whether the district court's application of the law is correct...." *Id.; State Sav. & Loan Ass'n of Lubbock v. Liberty Trust Co.*, 863 F.2d 423, 425 (5th Cir.1989) (this court engages in a de novo review of questions of law).

## III. DISCUSSION

The EPA appeals the district court's refusal to dismiss VPG's suit for lack of subject matter jurisdiction. The EPA contends that the United States has not waived its sovereign immunity and, thus, cannot be sued in the instant case.

In its complaint, VPG relied on two sections of the United States Code—section 113 of CERCLA (42 U.S.C. § 9613) and 28 U.S.C. § 1331—for jurisdiction. Neither of these provisions, however, suffices to establish jurisdiction in the instant case. As sovereign, the United States may only be sued with its consent. Waivers of sovereign immunity are " 'construed strictly in favor of the sovereign' ... and not 'enlarge[d] ... beyond what the language requires.' " *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–76, 77 L.Ed.2d 938 (1983) (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) (footnote omitted) and *Eastern Transp. Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927)).

■ Section 1331 states that district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." However, it is well settled that section 1331 "implies no general waiver of sovereign immunity[ ]," and, therefore, cannot alone be relied upon as the basis of jurisdiction in this case. *A.L. Rowan & Son, Gen. Con-*tractors, Inc. v. Department of Hous. and Urban Dev., 611 F.2d 997, 1000 (5th Cir. 1980); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. Unit B), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982).

■ Section 113(b) [9] of CERCLA grants the United States district courts original jurisdiction over all controversies arising under CERCLA, except as otherwise explicitly provided in subsections (a) and (h) of section 113. Like section 1331, however, section 113 contains no general waiver of the sovereign immunity of the United States. *See, e.g., B.R. MacKay & Sons, Inc. v. United States*, 633 F.Supp. 1290, 1296 (D.Utah 1986) (decided prior to SARA, case states that section 113(b) "does not operate to waive the United States' sovereign immunity." (footnote omitted)).

At this juncture, VPG contends that the Administrative Procedure Act (APA) contains the waiver of sovereign immunity necessary for the adjudication of the case at hand. *See* 5 U.S.C. § 701 *et seq.* Section 702 of the APA provides, in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *See also Alabama v. EPA*, 871 F.2d 1548, 1559 (11th Cir.1989) (Section 702 "creates a presumption that individuals can bring suit to challenge agency actions that cause legally cognizable injury."), *petition for cert. filed*, Sept. 1, 1989. However, several limitations on the provision exist: "The APA confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702, but withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review,' 5 U.S.C. § 701(a)(1)." *Block v. Community Nutri-*

---

9. Section 113(b) states:

Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy.

Venue shall lie in any district in which the release or damages occurred, or in which the defendant resides, may be found, or has his principal office. For the purposes of this section, the Fund shall reside in the District of Columbia.

42 U.S.C. § 9613(b).

*tion Inst.,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984); *Alabama v. EPA,* 871 F.2d at 1559; *see also* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3659, at 358 (1985). Moreover, APA provisions for judicial review apply to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court...."[10] 5 U.S.C. § 704.

The EPA argues that in the circumstances in which this case arises, CERCLA precludes judicial review of its actions and, thus, VPG may not rely upon the APA as the basis for jurisdiction. In considering the extent to which CERCLA precludes review, we heed the following dictate of the Supreme Court:

> Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.

*Block v. Community Nutrition Inst.,* 467 U.S. at 345, 104 S.Ct. at 2453; *see also Traynor v. Turnage,* 485 U.S. 535, 108 S.Ct. 1372, 1378, 99 L.Ed.2d 618 (1988) ("The presumption in favor of judicial review may be overcome 'only upon a showing of "clear and convincing evidence" of a contrary legislative intent.'" (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (citations omitted.))). With the

*Block* factors as guidance, we turn to determining whether CERCLA, as amended by SARA, precludes the review at issue here.

**A. The Background and Purpose of CERCLA**

Recognizing the threat of hazardous waste to human health and the environment, Congress enacted CERCLA in 1980. "CERCLA was designed 'to bring order to the array of partly redundant, partly inadequate federal hazardous substances clean up and compensation laws.'" *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1040 (2d Cir.1985) (quoting F. Anderson, D. Mandelker & A. Tarlock, *Environmental Protection: Law and Policy* 568 (1984) (footnote omitted)). "The primary purpose of CERCLA is 'the prompt cleanup of hazardous waste sites[.]'" *Dickerson v. EPA,* 834 F.2d at 978 (quoting *J.V. Peters & Co., Inc. v. EPA,* 767 F.2d 263, 264 (6th Cir. 1985) (citation omitted)); *see also Exxon v. Hunt Corp.,* 475 U.S. 355, 359–60, 106 S.Ct. 1103, 1107–08, 89 L.Ed.2d 364 (1986) (CERCLA "seeks to facilitate government cleanup of hazardous waste discharges and prevention of future releases."); *B.R. MacKay & Sons, Inc.,* 633 F.Supp. at 1292 ("It appears that with the dangers or potential dangers caused by hazardous substances, shooting first and asking questions later was the intent of Congress, making it clear that under CERCLA the EPA should have and has full reign to conduct or mandate uninterrupted cleanups

**10.** VPG argues that even if we conclude that CERCLA does not make the actions of the EPA in the instant case reviewable under section 702 of the APA, the January 1988 letter is a "final agency action" and VPG is entitled to review under section 704 of the APA. The EPA responds that limitations imposed by section 701(a)(1) of the APA preclude judicial review in this context. Alternatively, the EPA argues that the January 1988 letter is not a final agency action. Pretermitting the latter issue, we find that the limitations of section 701(a)(1) apply to review under section 704, so as to prevent judicial review where the relevant statute, in this case CERCLA, as amended by SARA, itself precludes judicial review. The Eleventh Circuit so concluded in *Dickerson v. EPA,* 834 F.2d 974 (11th Cir.1987). In *Dickerson,* the appellants argued that they were entitled to pre-enforcement review of a proposed clean up order of the

EPA under sections 702 and 704 of the APA. *Id.* at 977. Relying on the Supreme Court's discussion in *Block,* 467 U.S. at 345, 104 S.Ct. at 2453 (*see also* discussion *infra* ), on the factors to be considered in deciding whether a statute precludes review, the *Dickerson* court concluded that "CERCLA precludes pre-enforcement review of EPA response actions." *Id.; see also B.R. MacKay & Sons, Inc.,* 633 F.Supp. at 1297 (after citing to *Block,* the court stated, "A reading of the statute in light of its structure and statutory scheme, its objectives, the legislative history, and the nature of the administrative action suggests a preclusion of judicial review even of final agency action."); Note, *Statutory Preclusion of Judicial Review Under the Administrative Procedure Act,* 1976 Duke L.J. 431 and n. 4 ("Where the statute ... actually 'preclude[s] judicial review' ... the APA review provisions afford no access to the courts.").

for the benefit of the environment and the populous.").

To this end, courts have consistently held that where judicial review will delay remedial and removal clean up activities, they are barred from reviewing response actions prior to an attempt by the EPA to enforce its orders or allegations of liability. For example, in *Lone Pine Steering Committee v. EPA*, a number of PRPs—seeking to stop the EPA from implementing its remedial plan—filed a "declaratory judgment action, alleging that the EPA's plan was too costly, the agency had failed to evaluate [their] proposal, and the Record of Decision contained inaccurate technical data and erroneous assumptions resulting in duplicative and unnecessary corrective measures." 777 F.2d 882, 884 (3d Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). The district court dismissed their action and the circuit court affirmed the district court's dismissal, reasoning that "although not explicitly stated in the statute [CERCLA], we find in § 9604 an implicit disapproval of pre-enforcement judicial review." *Id.* at 886–87 ("The statutory approach to the problem of hazardous waste is inconsistent with the delay that would accompany pre-enforcement review."); *see also Wagner Seed Co. v. Daggett*, 800 F.2d 310, 315 (2d Cir.1986) (where appellant sought a preliminary injunction against EPA order to either clean up a site or pay penalties, district court "lacks jurisdiction to consider the appropriateness of appellant's act of God defense."); *Wheaton Ind. v. United States*, 781 F.2d 354, 357 (3d Cir.1986) ("CERCLA precludes judicial review of the EPA's actions in connection with remedying and cleaning up hazardous waste sites until the EPA brings suit for the costs incurred."); *Barnes v. United States Dist. Court for the W. Dist. of Wash.*, 800 F.2d 822 (9th Cir.1986) (order issued directing district court to dismiss case because CERCLA "does not authorize pre-enforcement review of [EPA] orders.").[11]

Section 113(h) of SARA,[12] enacted in 1986, codified earlier case law limitations

---

**11.** We note that courts have allowed both private parties and the government to obtain declaratory judgments of liability for past and future response costs prior to the filing of a cost-recovery suit. For instance, in *Pinole Point Properties v. Bethlehem Steel Corp.,* Pinole Point engaged in a cleanup of property it had bought from Bethlehem Steel and filed an action seeking declaration that Bethlehem Steel would be liable for Pinole Point's past and future response costs. 596 F.Supp. 283 (N.D.Cal.1984). "In cases in which either the government or a private party has expended response costs, courts have not hesitated to grant [them] declaratory relief." *Id.* at 291. This setting, however, is very different from the one at hand. First, VPG has not engaged in a cleanup of the Rogerdale Road site. As *Pinole Point* explains, suits seeking declarations of liability where a party has already expended considerable funds on a cleanup are consistent with CERCLA intent. *Id.* at 292 ("'To require either the government or a private party to complete cleanup prior to filing suit would defeat the dual purposes of CERCLA to promote rapid response to hazardous situations and to place the financial burden on the responsible parties'" (quoting *Jones v. Inmont Corp.* 584 F.Supp. 1425, 1430 (S.D.Ohio 1984))). Allowing a PRP to bring a declaratory judgment action at this stage in the proceedings at hand would not facilitate cleanup or otherwise further CERCLA intent. In addition, the case at hand, unlike *Pinole Point*, involves a challenge to remedial or removal action of the EPA and, thus, involves the issue of whether the sovereign immunity of the United States has been waived.

**12.** Section 113(h) provides for review of remedial and/or removal actions in the following limited circumstances:

No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant or appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

on "pre-enforcement" review of remedial and removal actions. Cases since SARA have recognized Congress' obvious intent to preclude review in relation to removal and remedial actions except in the limited circumstances described in section 113(h). For example, in *Dickerson, supra,* in which appellant property owners appealed the district court's dismissal of their suit seeking injunctive and declaratory relief from a cleanup action proposed by the EPA, the court affirmed the dismissal and stated, "Judicial review of the EPA's action is available when the EPA files a cost recovery suit under 42 U.S.C. § 9607." 834 F.2d at 978 (footnote omitted); *see also Solid State Circuits, Inc. v. United States EPA,* 812 F.2d 383, 386 n. 1 (8th Cir.1987) (court "agree[d] with the district court's decision that it lacked jurisdiction to review the merits of an EPA clean-up order [under section 106] prior to an attempt by the EPA to enforce it."). Thus, it is clear that CERCLA explicitly limits judicial review of remedial and removal plans. where such review will delay cleanup.

█ In the case *sub judice,* the EPA argues that the preclusion of judicial review of removal and remedial actions extends to the scenario at hand where the removal action has already taken place and any delay caused by the VPG suit will not interfere with the emergency cleanup of the Rogerdale Road site. The EPA asserts that the January 1988 letter from the EPA to VPG was one of several "enforcement activities" taken by the EPA in relation to identifying PRPs for the removal action at Rogerdale Road.[13] Given the restrictions SARA expressly places on the timing of review of remedial and removal actions, the

EPA claims that review of its allegations of VPG liability at this time would contravene section 113(h) and that such suit should have been dismissed by the district court for lack of subject matter jurisdiction.[14]

Although VPG's suit would not stall the cleanup portion of the removal action, recognizing jurisdiction in this instance appears contrary to the actual language of section 113(h) of CERCLA and certainly runs contrary to the "philosophy" of the statute. The January 1988 letter was the third letter that VPG received concerning its potential liability for the removal actions taken by the EPA at the Rogerdale Road site. While the letter sought payment for the actions taken thus far and alleged liability for future remedial costs, it also sought to encourage settlement by warning the PRPs of their potential legal liability[15] and giving them a chance to coordinate payments by enclosing the names and addresses of the other PRPs. In addition, the letter did not establish that recovery would be sought from all recipients of the letter and, thus, should not be regarded as an action commencing a cost recovery suit.[16] Given these attributes, it appears—contrary to VPG's assertions otherwise—that the January 1988 letter was actually part of the enforcement process related to the removal action at Rogerdale Road. If the letter is read in this manner, then section 113(h) clearly prohibits the district court from exercising subject matter jurisdiction as section 113(h) delineates limited opportunities for judicial review of challenges to the EPA's selection of remedial or removal actions under section 104 (42 U.S.C. § 9604) and there is no indication

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.
42 U.S.C. § 9613(h).

13. CERCLA expressly provides that enforcement activities related to removal actions are to be considered part of such removal action. *See, supra,* note 4.

14. We note that VPG does not claim to challenge the EPA's removal actions under section 104 of CERCLA (indeed, VPG disputes this characterization of its suit), but instead files its

claim for a declaration of non-liability pursuant to section 107 of CERCLA. However, its challenge is based upon the January 1988 demand letter that the EPA claims was part of its removal action in connection with the Rogerdale Road site.

15. The January 1988 letter also stated that civil litigation might be pursued if the PRPs did not settle.

16. In the end, the United States filed a suit against only seven of the ten parties identified as potentially responsible in the letter.

that such provision only applies when a delay in cleanup would ensue.

Additionally, the fact that section 113 of SARA was designed "to confirm[ ] and build[ ] upon existing case law," supports the view that this is a situation in which Congress intended to withhold judicial review. 132 Cong.Rec. S14928 (daily ed. Oct. 3, 1986) (Statement of Senator Thurmond, the chairman of the Judiciary Committee that drafted SARA's judicial review provision). In *B.R. MacKay & Sons, Inc., supra,* PRPs brought an action seeking a declaratory judgment that they would not be held liable for certain EPA cleanup costs. Although the district court found that the PRPs had received "a Department of Justice letter stating the government's clear intention to file a cost recovery action in the near future if settlement discussions failed" and the district court found the EPA's action "final," the district court held that "the statute [CERCLA] does not contemplate or allow review of final agency action prior to a government cost-recovery action." *B.R. MacKay & Sons, Inc.,* 633 F.Supp. at 1297; *cf. Pacific Resins and Chemicals, Inc. v. United States,* 654 F.Supp. 249, 253 (W.D.Wash.1986) (decided pre-SARA, the court held that a PRP receiving a notice letter of potential liability could not bring an action for a declaratory judgment that it was not a party liable under CERCLA prior to the EPA's initiation of an enforcement action under section 106 or 107).

▆ Although decided prior to the enactment of SARA and involving a "final" EPA action, the *B.R. MacKay & Sons* case is particularly relevant to the case at hand because, as in the instant case, the cleanup actions for which the PRPs sought a declaration of non-liability had already occurred. Thus, if the district court had entertained the declaratory judgment action, it would not have delayed any actual cleanup of hazardous substances or discouraged voluntary cleanup by the PRPs. *Id.* at 1294. Nevertheless, after considering the CERCLA statute, its structure, and legislative history, the district court concluded that "[i]n all events, the philosophy of the statute is that until the government initiates a cost-recovery action, a potential responsible party cannot obtain judicial review of the agency action." *Id.* at 1297. We reach the same conclusion in the instant context.

## B. Legislative History

Legislative history of SARA also supports reading CERCLA to prevent review on the issue of liability prior to the filing of a cost-recovery action by the government. Senator Thurmond explained the scope of section 113(h) as follows:

> The timing of the review section is intended to be comprehensive. It covers all lawsuits, under any authority, concerning the response actions that are performed by the EPA.... The section also covers all issues that could be construed as a challenge to the response, and limits those challenges to the opportunities specifically set forth in the section.... [T]here is no jurisdiction to review a response action through a citizen suit except as provided in the timing of review section. *Citizens, including potentially responsible parties, cannot seek review of the response action or their potential liability for a response action—other than in an action for contribution—unless the suit falls within one of the categories provided in this section [113]* (emphasis added).

132 Cong.Rec. S14929 (daily ed. Oct. 3, 1986).[17] The broad language employed

---

17. Representative Glickman, one of the main House spokespersons on the issue of judicial review in the conference committee, made a nearly identical statement in explaining the ramifications of section 113(h) to House members:

> The timing review section covers all lawsuits, under any authority, concerning the response actions that are performed by the EPA.... The section also covers all issues that could be construed as a challenge to the response and limits those challenges to the opportunities specifically set forth in this section.
>
> Thus, for example, *citizens, including potentially responsible parties, cannot seek review of the response action or their potential liability for a response action unless the suit falls within one of the categories provided in this section [113(h)]* (emphasis added).

132 Cong.Rec. H9582 (daily ed. Oct. 8, 1986).

supports interpreting CERCLA to extend case law findings that hold that PRPs cannot seek judicial review until the United States has brought a cost-recovery suit.

## C. Other CERCLA Objectives

■ Although review in the case at hand would not delay actual cleanup of hazardous wastes, it would force the EPA—against the wishes of Congress—to engage in "piecemeal" litigation and use its resources to protect its rights to recover from any PRP filing such a declaratory judgment action.[18] 132 Cong.Rec. S14928 (daily ed. Oct. 3, 1986) (Senator Thurmond stated that section 113(h) "is designed to preclude piecemeal review and excessive delay of cleanup."). The potential magnitude of this problem becomes apparent when one considers the vast number of PRP letters "outstanding"[19] and the fact that cost recovery suits often involve many parties residing in a variety of locales. *See, e.g., In re United States*, 816 F.2d 1083, 1089 and n. 5 (6th Cir.1987) (suit involved more than 250 parties and over 600 parties were impleaded as third party defendants). If PRPs were allowed to file suits for declaratory judgment prior to cost recovery suits being filed by the EPA, much of the EPA's time and resources could end up being allocated to litigation in this area. *See In re Combustion Equipment Associates*, 838 F.2d at 40 ("any time

an agency is forced to litigate it expends funds it might otherwise have used to further its primary purpose, but ... Congress has directed the courts to be especially wary of interfering with CERCLA work....").

Declaratory judgment actions by PRPs (even if such suits were limited to cases where, as here, suit would not delay actual cleanup of hazardous substances) could also lead to a waste of resources as the EPA will not necessarily try to hold all recipients of a PRP letter legally liable.[20] Moreover, the crazy quilt litigation that could result from allowing PRPs to file suits for declaratory judgments of non-liability prior to the initiation of government cost-recovery actions could force the EPA to confront inconsistent results. Hence, we believe that sanctioning VPG's declaratory judgment actions could lead to inefficient uses of EPA resources and would certainly detract from the EPA's ability to apportion its enforcement resources as it deems most appropriate.[21] These results would be incompatible with the design of CERCLA and the discretion granted to the EPA in carrying out the statute.[22]

In all, we find VPG's argument that the district court in the Northern District possesses jurisdiction under the provisions of the APA because VPG does not challenge a

---

18. We realize that the inability of a PRP to initiate a proceeding to resolve the existence and amount of its liability may result in a material adverse impact on some aspects of a PRP's ability to conduct its business (e.g., obtaining credit). However, we are bound by the statute and unless—in recognition of this problem—Congress acts to change the situation, we are constrained to reach the conclusion that we do. Moreover, we note that in the instant case, the problem is not severe; there is now a suit pending in the Southern District where the issue of VPG's liability can be resolved.

19. *See In re Combustion Equipment Associates*, 838 F.2d 35, 40 (2d Cir.1988) (approximately 10,000 PRP letters are "outstanding" at this point).

20. We note, once again, that even in this case where the EPA sent out three letters to PRPs—the last of which was a strongly worded demand letter—only seven of the ten parties to receive the demand letter were ultimately sued.

21. We also note that our finding that the district court lacks jurisdiction in this matter does not mean that VPG will be deprived of its day in court. VPG will be able to assert all of its allegations from its suit in the Northern District as defenses in the action filed by the United States in the Southern District. *Cf. B.R. MacKay & Sons, Inc.*, 633 F.Supp. at 1297 ("[O]nce the cost-recovery action is brought, the alleged responsible party can assert all its statutory and nonstatutory defenses and can obtain a complete declaration of its rights and liabilities.").

22. For instance, under section 113(g)(2), the EPA must bring an action to recover costs within three years "after the completion of a removal action...." 42 U.S.C. § 9613(g)(2). If PRPs are allowed to bring actions for declaratory judgment, as VPG asserts here, the government will lose some of the flexibility of determining when a cost recovery suit should be filed and will be forced to operate on the timetable of the PRP.

remedial or response action under CERC-LA unconvincing in light of the case law, the legislative history and our analysis of section 113(h), and CERCLA's objectives. Thus, we conclude that section 702 of the APA does not operate as a waiver of the United States' sovereign immunity to suit in the instant case because CERCLA precludes the judicial review sought.

IV.

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to dismiss the case.

REVERSED and REMANDED.