**Stratton J. GEORGOULIS, et al., Plaintiffs,**

v.

**ALLIED PRODUCTS CORP., Defendant.**

**Civ. A. No. 3:91–CV–1553–T.**

United States District Court, N.D. Texas, Dallas Division.

Nov. 27, 1991.

Daniel M. Dibble, Timothy McNamara, Sue M. Honegger, Lathrop & Norquist, Kansas City, Mo., Rodney H. Lawson, Graham Bright & Smith, Dallas, Tex., for plaintiffs.

Judith A. Schening, Hugh Hackney, Jonathan Skidmore, Scott M. Keller, Fulbright & Jaworski, Dallas, Tex., Robert L. Driscoll, Stephen J. Owens, David R. Tripp, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

MALONEY, District Judge.

This matter is before the court on Defendant's September 30, 1991 Motion to Dismiss. Plaintiffs responded to the motion on November 12, 1991. The court, having considered the motion and the response, is of the opinion that the motion should be granted.

## BACKGROUND

Plaintiffs filed this declaratory judgment action against Defendant Allied Products Corporation ("Allied") pursuant to 28 U.S.C. § 2201. Plaintiffs seek a declaration that they are not liable for the past or future costs incurred by Allied in cleaning up a hazardous waste dump site located in Charles City, Iowa. Allied was required to clean up the site under the Federal Superfund statute, also known as the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–75. Defendant seeks to

have this case dismissed because the court lacks subject matter jurisdiction over this action pursuant to CERCLA § 113(h), 42 U.S.C. § 9613(h). Section 113(h) bars certain actions in federal court under CERCLA unless the suit falls within specifically enumerated exceptions. Plaintiffs do not deny that they do not fall within the exceptions to section 113(h), rather they argue that the section is inapplicable in this situation.

Plaintiffs, TIC United Corporation and TIC Investment Corporation, owned White Farm Equipment Company ("White Farm") from approximately 1971 through October 1985. In October of 1985, Allied purchased the assets of White Farm, including the Iowa facility where the hazardous wastes at issue were generated ("Iowa Facility"). Plaintiff, Stratton Georgoulis, was an officer and director of both TIC companies when they owned White Farm. The Iowa Facility disposed of its hazardous waste at a nearby dump site ("Iowa Site").

At this time there are no allegations that the disposal was in any way illegal, but in 1989, the United States Environmental Protection Agency ("EPA") concluded that the Iowa Site was releasing hazardous substances into the environment. EPA demanded that Allied and others investigate and remediate the Iowa Site. Allied agreed to step forward and commence investigation and remediation of the Iowa Site.

Allied incurred significant costs in responding to EPA's demands. Consequently, Allied, and the EPA, made demands on other potentially responsible parties who had refused to voluntarily participate in the cleanup effort. Allied made demands on Plaintiffs, including a demand dated July 11, 1991, to reimburse Allied for response costs associated with the Iowa Site. In response to Allied's demand, Plaintiffs filed this declaratory judgment seeking a determination that they are not liable for any response costs incurred in cleaning up the Iowa Site.

Plaintiffs attempt to invoke this court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 and CERCLA § 113(b), 42 U.S.C. § 9613(b). Defendant argues that this court lacks subject matter over this action by virtue of CERCLA § 113(h), and that the case should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## DISCUSSION

CERCLA provides a statutory scheme for cleaning up hazardous substances. CERCLA allows the EPA to undertake direct removal or remedial action to protect the public health or welfare or the environment when it determines that a release or potential release of a hazardous substance poses an imminent and substantial danger to the public or the environment. 42 U.S.C. § 9604(a). The EPA may also decide that a party responsible for the release will take appropriate removal action.[1] *Id.*

CERCLA § 113(h) bars an action brought in federal court challenging removal or remedial action selected under CERCLA's provisions, unless the action falls within one of five enumerated exceptions. Specifically, § 113(h) provides:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
>
> (1) An action under section 9607 of this title to recover response costs or damages for contribution.
>
> (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

---

**1.** Removal refers to short-term action taken to halt the immediate risks posed by hazardous wastes. *See* 42 U.S.C. § 9601(23). Remedial action refers to permanent remedies taken instead of or in addition to removal. *See* 42 U.S.C. § 9601(24).

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h) (Supp.1991).

Defendant argues that an action, such as this one, seeking a declaration of non-liability under CERCLA § 113(b), constitutes "a challenge to a removal or remedial action selected under [CERCLA Section 104]" and is therefore barred by CERCLA § 113(h). In *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380 (5th Cir.1989), the Fifth Circuit reversed the district court's refusal to dismiss the plaintiff's suit seeking a declaratory judgment that it was not liable for the EPA's response actions in connection with a site cleaned up by the EPA. In that case the EPA completed the cleanup at the site in question with no involvement of potentially responsible parties ("PRP's"). After the cleanup, the EPA sent Voluntary Purchasing Group ("VPG") a letter demanding payment from VPG for Superfund money expended in the cleanup. VPG responded by filing a suit seeking a declaratory judgment that it was not a responsible party under CERCLA. The Fifth Circuit held that "until the government initiates a cost recovery action, a [PRP] cannot obtain judicial review of the agency action." *Id.* at 1389 (quoting *B.R. MacKay & Sons, Inc. v. United States*, 633 F.Supp. 1290 (D.Utah 1986)). Section 113(h) was interpreted to preclude judicial review of the issue of liability of PRP's prior to initiation of a cost recovery action by the government. *Id.*[2] At the commencement of this suit no cost recovery action had been initiated.

The Fifth Circuit recognized that two of the primary objectives of § 113(h) are to prevent piecemeal litigation and excessive delay of cleanup of hazardous waste sites. *Id.* 889 F.2d at 1390. The magnitude of these problems becomes obvious when the vast number of PRP's are considered,[3] as well as the fact that cost-recovery suits often involve many parties residing in a variety of locales. *Id.* If PRP's were allowed to file suits for declaratory judgment, prior to cost recovery suits being

---

**2.** The same conclusion was reached in *Apache Powder Co. v. United States*, 738 F.Supp. 1291 (D.Ariz.1990) (District court dismissed suit seeking declaration of non-liability under CERCLA).

**3.** It is undisputed that CERCLA provides for sweeping liability for response costs. Section 107(a) of CERCLA provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a) (Supp.1991).

filed by the EPA, much of the agency's time and resources would end up being allocated to litigation in this area. *Id.*

Plaintiffs, rather than challenging the court's holding and legal rationale in *Voluntary Purchasing Groups*, present two reasons why this suit is distinguished from that case and not precluded by § 113(h). First, Plaintiffs argue that § 113(h) only bars applicable suits brought against the EPA, and that this suit is not barred because the EPA is not a party. Second, they argue that this suit does not "seek to challenge any removal or remedial measure issued by the EPA under Section 9606(a) [sic]." Plaintiffs first argument presents the court with an issue of first impression.[4] Neither of the parties cite, and the court's independent research has not found, a case analyzing the application of § 113(h) to a suit between private parties. The court, however, upon reviewing existing analogous case law and the legislative history of CERCLA, concludes that § 113(h) does preclude the court's exercise of subject matter jurisdiction over Plaintiffs' suit.

Section 113(h) precludes challenges to removal or remediation action selected under § 104. Section 104 provides for certain removal and other remedial action that may be taken by the EPA. Section 104 also provides, however, that "[W]hen the [EPA] determines that such action will be done promptly and properly by the owner or operator of the facility ... or by any other potentially responsible party, the [EPA] *may allow such person to carry out the action* ... in accordance with section 9622 of this title." 42 U.S.C. § 9604(a)(1) (Supp. 1991) (emphasis added). CERCLA § 122, entitled "Settlements," provides "[W]henever practicable and in the public interest, as determined by the [EPA], the [EPA] shall act to facilitate agreements under this section that are in the public interest ... in order to *expedite effective remedial actions and minimize litigation.*" 42 U.S.C. § 9622(a) (Supp.1991) (emphasis added).

The language of CERCLA clearly indicates that EPA's allocation of the responsibilities for cleanup to PRP's, under §§ 104 and 122, is meant to "expedite effective remedial actions and minimize litigation." Such an allocation of responsibility was made in the present case. On April 14, 1989, the EPA and Allied entered into an Administrative Order on Consent whereby Allied was to conduct investigation into the remedial action necessary for cleanup of the White Farm site. On the basis of Allied's investigation and other information, on September 28, 1990, the EPA selected a remedial action for the Iowa Site. On June 4, 1991, the EPA issued a Special Notice Letter to Plaintiffs notifying them of their potential CERCLA liability, inviting them to enter into negotiations for a possible settlement to address implementation of the remedial action selected by the EPA, and requesting reimbursement of certain of EPA's costs. On August 21, 1991, the EPA issued an administrative order to Allied and Plaintiffs ordering them to perform the remedial action selected by the EPA. The EPA has indicated to Plaintiffs that it intends to hold them liable for response costs. Plaintiffs, knowing they cannot sue the EPA for a declaration of nonliability, attempt to sue Allied instead. In essence, Plaintiffs are attempting to accomplish indirectly, what CERCLA prohibits them from doing directly.

The purpose of the agreement between Allied and the EPA is to expedite effective remedial actions and minimize litigation. Under Plaintiffs' reading of § 113(h), a party entering into a similar agreement with the EPA would be subject to suit in any number of forums by PRP's attempting to litigate the issue of their liability for cleanup costs. Clearly this would be contrary to the stated purposes of CERCLA.

Allowing PRP's to sue one another in the piecemeal fashion attempted by Plaintiffs would seriously undermine CERCLA's stated objectives. First, resources that should be directed toward cleanup would instead

---

**4.** Plaintiffs' second argument is a misstatement of the applicable law; apparently Plaintiffs meant to state that this suit does not seek to challenge a removal or remedial action selected under section 9604.

be allocated to litigation. Second, parties that would normally enter into settlements with the EPA, designed to accelerate the cleanup process, would be discouraged to do so for fear of being sued by PRP's in declaratory judgment actions. Third, piecemeal lawsuits between PRP's would frustrate CERCLA's objective of speedy cleanup of hazardous waste sites. Finally, piecemeal declaratory judgments involving the same circumstances would consume valuable judicial resources and lay the basis for inconsistent adjudications of liability. Senator Strom Thurmond explained the scope of § 113(h) as follows:

> The timing of the review section is intended to be comprehensive. It covers all lawsuits, under any authority, concerning the response actions performed by the EPA.... The section also covers all issues that *could be construed as a challenge to the response,* and limits those challenges to the opportunities set forth in the section.... [T]here is no jurisdiction to review a response action through a citizen suit except as provided in the timing of review section. *Citizens, including potentially responsible parties, cannot seek review of the response action or their potential liability for a response action—other than in an action for contribution—unless the suit falls within one of the categories provided in [section 113].* (Emphasis added.)

132 Cong.Rec. S14929 (daily ed. Oct. 3, 1986) (quoted in *Voluntary Purchasing Group,* 889 F.2d at 1389).[5]

The legislative history is clear that Congress intended § 113(h) to be comprehensive, and that its prohibitions extended to suits that could be construed to constitute challenges to EPA's response activities. For Plaintiffs' lawsuit to be of any legal significance it must be construed as a challenge to the EPA's response activities. If Plaintiffs were to prevail in this action, the issue of their liability for response costs in cleaning up the Iowa Site would be settled. The EPA would be precluded from recovering its response costs from Plaintiffs. If the EPA is not so precluded, then Plaintiffs' suit is a patent waste of judicial resources, as well as financial resources that could better be used to cleanup the Iowa Site. This situation presents one of the most compelling reasons for concluding that § 113(h) bars Plaintiffs' suit. As the Fifth Circuit noted, "[I]f PRP's were allowed to file suits for declaratory judgment prior to cost recovery suits being filed by the EPA, much of the EPA's time and resources could end up being allocated to litigation in this area." *Voluntary Purchasing Group,* 889 F.2d at 1390. This reasoning is no less compelling in the context of a suit between private parties. If the EPA has not initiated a cost recovery action, there has been no resolution of the issue of PRPs' liability to the EPA. Therefore, the EPA's interests, potentially adversely affected by each satellite declaratory judgment, would necessarily have to be protected in each suit. Further, given CERCLA's sweeping contribution scheme,[6] adjudication of Plaintiffs' liability at this time would be at best premature.

The legislative history, as well as CERCLA's statutory provisions, indicates a clear Congressional intent to limit suits by PRP's against one another to actions for contribution. The court, in the complete absence of previous judicial interpretation of this is-

**5.** The court also included Representative Glickman's statements to the House of Representatives explaining the ramifications of section 113(h):

> The timing review section covers all lawsuits, under any authority, concerning the response actions that are performed by the EPA.... The section also covers all issues that could be construed as a challenge to the response and limits those challenges to the opportunities specifically set forth in this section.
> Thus, for example, *citizens, including potentially responsible parties, cannot seek review of the response action or their potential liability for a response action unless the suit falls within one of the categories provided in [section 113(h)].* (Emphasis added.)

132 Cong.Rec. H9582 (daily ed. Oct. 8, 1986) (quoted in *Voluntary Purchasing Groups,* 889 F.2d at 1389 n. 17).

**6.** Section 113(f) provides "[A]ny person may seek contribution from any other person who is liable or potentially liable under (CERCLA)." 42 U.S.C. § 9613(f).

sue, is compelled to rely substantially on legislative history and the stated purposes of CERCLA, particularly the purposes of § 113(h). Having considered these sources, as well as case law interpreting this section in the context of suits against the EPA, the court concludes that, pursuant to 42 U.S.C. § 9613(h), this court lacks subject matter jurisdiction over Plaintiffs' lawsuit.

It is therefore ORDERED that Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.